430 So.2d 1088 (1983)
Christel F. LONZO, Plaintiff-Appellee,
v.
TOWN OF MARKSVILLE, et al., Defendants-Appellants.
No. 82-516.
Court of Appeal of Louisiana, Third Circuit.
March 28, 1983.
Rehearings Denied May 26, 1983.
*1089 Cliffe E. LaBorde, III, Marksville, for defendants-appellants.
John T. Bennett, Marksville, for plaintiffappellee.
Roger Breedlove, Alexandria, Breazeale, Sachse & Wilson, Henry Salassi and Frank S. Craig, III, Baton Rouge, Gist, Methvin, Hughes & Munsterman, Victor Sooter, Alexandria, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and YELVERTON, JJ.
DOMENGEAUX, Judge.
Christel Lonzo brought this action claiming workers compensation for total disability allegedly caused by a work related injury, i.e., a ruptured cerebral aneurysm. *1090 Named as defendants were the Town of Marksville, Inc. (hereafter, the Town), and its alleged insurer, Louisiana Municipal Risk Management Agency (hereafter, the Risk Agency); Avoyelles Parish Police Jury (hereafter, the Parish) and its insurer, Rockwood Insurance Company (hereafter, Rockwood); and, the State of Louisiana, through the Department of Public Safety (hereafter, the State).
The trial judge rendered judgment in favor of Ms. Lonzo and against the Town and the Risk Agency, awarding compensation for total and permanent disability together with all medical expenses. Ms. Lonzo's claim for penalties and attorney's fees was dismissed as were her claims against all other parties. A timely suspensive appeal was perfected on behalf of the Town and the Risk Agency. Ms. Lonzo timely answered the appeal.
The parties raise several issues on appeal which broadly stated are as follows:
(1) Did the plaintiff's accident arise out of her employment so as to be compensable under the worker's compensation act, and, if so, what is the extent of plaintiff's disability?
(2) Which of the parties defendant are liable to the plaintiff under the workers compensation act?
(3) What is the correct rate of compensation and the correct amount of medical expenses to which plaintiff is entitled and should penalties and attorney's fees have been awarded?

FACTS
Ms. Lonzo was appointed clerk of court for the Marksville City Court by Judge B.C. Bennett, Jr. shortly after he was elected to the newly created post of City Judge of Marksville, approximately ten years ago. Ms. Lonzo's duties as clerk of court included posting tickets, collecting fines, accepting charges and complaints, taking affidavits, secretarial work and attending court sessions. Her normal working hours were from 8:00 A.M. to 4:00 P.M. with an hour for lunch.
During the eight or so years that Ms. Lonzo served in this position she worked tirelessly and selflessly and was willing to serve the Town in other capacities. Shortly after her appointment as city clerk, she was also sworn in as a policewoman in order to handle women prisoners since at the time there were no women police officers working for the Town. In addition, Ms. Lonzo regularly acted as a stand-in radio dispatcher for the city police.
As remuneration for the duties performed by Ms. Lonzo as policewoman and clerk of court, she was receiving the following amounts monthly from the following sources:
(1) City of Marksville$257.00
(2) City Court Criminal Fund$50.00
(3) City Court Civil Fund$70.00 (average)
(4) City Court Marshal's Fund$50.00
(5) State of Louisiana Supplemental Pay $241.00
(6) Avoyelles Parish Police Jury$100.00 Total$768.00
On the morning of November 3,1980, Ms. Lonzo was sitting in Judge Bennett's office, routinely discussing a wide range of affairs relating to the court and her police work, when she suddenly began to feel weak and dizzy. She fainted and was rushed to the Marksville General Hospital where she was given emergency room treatment. She was immediately transferred to Cabrini Hospital in Alexandria where she was positively diagnosed by Dr. John Patton as having suffered a ruptured cerebral aneurysm of the basalar artery.
Because of the extremely high mortality rate associated with surgery on this particular type of aneurysm, Doctor Patton transferred Ms. Lonzo to University Hospital in London, Ontario, to be treated by the eminent Dr. Charles Drake. Doctor Drake, through successful surgical intervention, "clipped" the ruptured aneurysm and treated three other dormant aneurysms that he discovered at the bifurcation of the basalar artery. Ms. Lonzo remained in Canada for approximately two months, after which she *1091 returned to Doctor Patton's care in Alexandria. Doctor Patton continued to treat Ms. Lonzo until her discharge on March 30, 1982.
As a result of blood which escaped at the time that the aneurysm ruptured, Ms. Lonzo sustained damage to a portion of the brain which causes her to suffer from a confusional state of recent memory impairment. Because of this disability, Ms. Lonzo's attempt to return to work was unsuccessful.

DID THE PLAINTIFF'S ACCIDENT ARISE OUT OF HER EMPLOYMENT?
The principal error urged by the Town and the Risk Agency on appeal is the finding of the trial judge that Ms. Lonzo's accident arose out of her employment within the meaning of the worker's compensation laws of this state.
In his written reasons for judgment, the trial judge summarily concluded that the plaintiff suffered an accidental injury in the course and scope of her employment which completely disabled her. Without further determining that the accident was job related, he found that the plaintiff was entitled to compensation benefits.
In the recent case of Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La. 1982), the Supreme Court undertook a comprehensive review and analysis of the long jurisprudence bearing on the requirements for a successful claim for worker's compensation in heart attack, cerebral hemorrhage and similar cases. The Court observed:
"An accident occurs in the course of employment when it happens during the time of employment and at a place contemplated by the employment.... Such a showing alone, however, does not satisfy Louisiana's dual requirement, although it will assist the worker over the first hurdle. There is the additional requirement that the accident `arise out of the employment.' Arising out of employment contemplates the accident's being the result of some risk to which the employee is subjected in the course of his employment and to which he would not have been subjected had he not been so employed.... Furthermore, this risk of employment from which injury resulted should be one greater than that occasioned by a person not engaged in the employment ...." [Footnotes and citations omitted].
The Supreme Court then set forth a test for the degree of physical exertion, stress or strain necessary to make a prima facie showing that the accident arose out of or was connected with the employment. However, they underscored in a footnote that the standard for meeting this burden of proof in heart compensation cases involving mental or emotional stress is different and is that enunciated in McDonald v. International Paper Company, 406 So.2d 582 (La. 1981), and Ferguson v. HDE, Inc., 270 So.2d 867 (La.1972). Guidry, supra, at 633, at footnote 17. Specifically, the Court in Guidry stated:
"Most recently, McDonald v. International Paper Company, 406 So.2d 582 (La. 1981) placed the Ferguson decision in perspective as precedent for the proposition that death by heart attack produced by extraordinary mental or emotional workrelated stress is compensable." [at 632, footnote 11].
While the requirement in McDonald that the stress be "extraordinary" was questioned by the Second Circuit in Beaty v. Thiokol Corporation, 414 So.2d 1292 (La. App. 2nd Cir.1982), at 1294, footnote 2, we find the Supreme Court pronouncements in Ferguson, McDonald, and Guidry controlling in this case. The record must thereby be examined in light of this standard in order to determine whether or not the district judge's findings of fact were manifestly erroneous.
Judge Bennett, who was having a conversation with the plaintiff immediately before she became stricken with the aneurysm, specifically related during his testimony at trial the matter that he and Ms. Lonzo had been discussing:

*1092 "As a matter of fact, I recall the discussion I was having with her. And, apparently, it was the cause of her concern. Sometime back, I received a call from Irma Young, who is the Police Officer, telling me that a fellow by the name of Gerard Prior was coming to file charges against the Sheriff's Deputy, or had come to file charges againstdiscussed it with Irma Young and Christelle Lonzo, for an alleged beating, either in the jailwell, it wasn't in the jailboth in the jail and I think on the street. And, they were concerned about what type of charges to file, and about whether first, if we should accept the charge, since the Sheriff's Deputy was involved. And, I advised `em that it was our duty to accept the charge. So, they didtook the charge and prepared a warrant and brought it to me. As a a result of that, there was a considerable, sort of unrest, in the police department, amongas between them and the Sheriff's Department, and she was discussing that situation with me, immediately prior to her sickness."
He stated further that Mr. Prior was a respected black man who was also a City Councilman in Marksville, while the Sheriff's Deputy was a white man.
Judge Bennett testified that Ms. Lonzo appeared nervous, agitated, and upset at this time. The Judge said that there was natural agitation during the conversation because Ms. Lonzo was concerned and worried. Since the record indicates that Ms. Lonzo was a black woman and a member of the Marksville Police Department, the tension and unrest in the Police Department over the charges brought by Mr. Prior against the white Sheriff's Deputy could quite possibly have subjected her to a great deal of racial pressures on her job. Considering the fact that in McDonald, supra, the plaintiff was deemed to have been subjected to extraordinary mental and emotional stress associated with the impending closure of the mill where he was employed, the possible termination of his job, and the increased difficulty of his job due to short handed work crews and poorly maintained equipment, we are in no position to conclude that the mental and emotional work related stress that Ms. Lonzo was enduring at the time of her aneurysm was not extraordinary as well. At best, we are unable to conclude that the trial judge committed manifest error in determining that her injury was compensable.
The two medical experts who testified were Doctor Patton and Doctor Drake, both board-certified specialists in neurosurgery. Doctor Drake is a pre-eminent physician in the specialty of neurosurgery who has pursued a particular interest in cerebral aneurysms. He operated on Ms. Lonzo and found the aneurysm to be of the saccular or "berry" variety. Doctor Drake provided a definition of "aneurysm" in his deposition, describing it as a blister that forms in the arteries at the crotch of a branching, consisting of a blowout (or ballooning) of the interlining of the artery, through the muscular or elastic coats of the artery. The blowout gradually enlarges until the wall becomes thin enough to rupture.
Both of these doctors agree that the origin of aneurysms is unknown. However, they acknowledged that emotional and physical stresses of life that raise blood pressure can precipitate the rupture of an aneurysm, even though one may rupture for no apparent reason at all.
Under all of these circumstances, and considering both the medical and lay testimony, we are unable to conclude that the trial judge was manifestly erroneous in finding that the plaintiff's accident arose out of her employment. We thereby adhere to his conclusion that her injury was compensable under the worker's compensation statute.[1]

*1093 WHICH OF THE DEFENDANTS ARE LIABLE TO THE PLAINTIFF?
The trial judge held the Town and the Risk Agency liable in solido for worker's compensation payments to the plaintiff. The Court further held that the State was not obligated to make such payments since there was no employer/employee relationship between the State and the plaintiff. The Court also absolved the Parish and its insurer, Rockwood, from liability on the grounds that Ms. Lonzo was considered under the law to be a "public official" and thereby exempt from worker's compensation coverage.
The plaintiff, in answering the appeal of this case by the Town and the Risk Agency, seeks to have all of the aforementioned defendants held liable in solido. Thus, the liability of each of these defendants must be separately assessed.
The State paid supplemental compensation to Ms. Lonzo in the amount of $241.00 per month pursuant to authority granted in La.R.S. 33:2218.1"... in the exercise of the police power of the State ...". In order to receive supplemental pay from the State, a municipal police officer must be "... employed on a full time basis by a municipality and all of whose compensation out of public funds is paid solely from municipal funds for full time work ...". La.R.S. 33:2218.2(C).
According to Earl F. Greenhouse, Chief of Police for the Town of Marksville, the Police Department certifies to the Department of Public Safety that certain employees are entitled to receive this supplemental pay. Every month, a roster is prepared by the Police Department certifying that the listed employees are still qualified to receive supplemental pay. According to the testimony of Edward Palazola, deputy chief accountant of the Department of Public Safety, the State makes no independent survey to check a municipality's records and verify that the persons listed on such rosters are entitled to receive supplemental pay. Rather, the State must rely exclusively on the veracity of the certification received from each municipality. Chief Greenhouse stated that the Department of Public Safety has no control over the members of the Police Department and simply makes supplemental payments pursuant to the information provided by the municipalities.
In Morgan v. Equitable General Insurance Company, 383 So.2d 1067 (La.App. 3rd Cir.1980), this Court held that payment of wages is not conclusive proof of an employer/employee relationship, particularly when another party directly controls the employee's actions. We feel that in this case, the trial judge correctly surmised that the State had no control over the activities of Ms. Lonzo whatsoever. The State merely provided supplemental payments to her by virtue of a system in which they were totally dependent upon the municipalities in order to determine continuing eligibility. The trial judge properly concluded that there was no employer/employee relationship between the State and Ms. Lonzo and we find no manifest error in such a conclusion.
Insofar as the Parish and Rockwood are concerned, the trial judge determined that they were insulated from liability by virtue of the provisions of La.R.S. 23:1034, which excludes "... an official of the State or a political subdivision thereof or of any such incorporated public board or commission..." from the provisions of the worker's compensation statute. The Court concluded that the plaintiff, as Clerk of the City Court of the Town of Marksville, was a "public official", and was thereby exempt from worker's compensation coverage.
We cannot agree with the district court's reasoning. La.R.S. 23:1034 provides a specific exemption to the rule excluding public officials from coverage, stating that "... members of the Police Department, or municipal employees performing police services for any municipality who are not elected public officials shall be covered by this chapter and shall be eligible for compensation..." (emphasis added). This exception specifically applies to Ms. Lonzo's situation. *1094 Thus, regardless of whether or not she is a public official, her claim is compensable under the worker's compensation statute.
Thus the issue becomes one of determining whether or not the Parish and Rockwood are liable to pay at least a portion of the worker's compensation benefits due to be recovered by the plaintiff. In this regard, the plaintiff argues that the case of Sicard v. City of New Orleans, 248 La. 1090, 184 So.2d 21 (La.1966) is applicable to the situation at hand. In that case, the Court held the City of New Orleans liable to pay worker's compensation benefits to a process server in the employ of the Juvenile Court of the Parish of Orleans on the basis that the City was statutorily bound to pay the expenses of the Juvenile Court, and that payment of workmen's compensation was a legitimate expense of such court.
We agree with plaintiff's position. La. R.S. 13:2488.56 provides:
"The expenses of operation and maintenance of the courtroom and offices shall be apportioned equally between the town of Marksville and the parish of Avoyelles."
We regard the payment of worker's compensation to be a legitimate operating expense of the City Court of the Town of Marksville. Thus it is clear that the Parish and its insurer are liable for at least a portion of the worker's compensation benefits payable to the plaintiff.
The Town of Marksville argues that since it only hired Ms. Lonzo to serve as Clerk of Court and not as a police officer, that it is not liable to her for worker's compensation payments. The Town alleges that the sole remuneration received by the plaintiff for her police work came from the State, and that it should be held liable for the full amount of the plaintiff's claim.
The Town's argument is without merit. As was previously stated, La.R.S. 23:1034 allows municipal employees performing police services who are not elected public officials to be eligible for benefits under the worker's compensation statute. The fact that the Town did not specifically remunerate the plaintiff for her police work is irrelevant under these circumstances. Since we have previously determined that worker's compensation benefits are a legitimate operating expense of the City Court of Marksville, the Town is liable in equal proportions with the Parish and Rockwood for compensation payments to the plaintiff. La.R.S. 13:2488.56.
Finally, the plaintiff seeks to hold the Risk Agency liable by virtue of the Town's membership in such organization. In this regard, the district court determined that the agency was a "de facto" carrier of worker's compensation insurance for the Town, and was thus liable to the plaintiff.
We feel that the trial court erred in ruling that the Risk Agency was a "de facto" worker's compensation insurer. La.R.S. 33:1345 specifically provides that an interlocal risk management agency is not an insurance company or an insurer under the laws of this state. This Court specifically recognized this in Logan v. Hollier, 424 So.2d 1279 (La.App. 3rd Cir.1982), where it determined that the Louisiana Municipal Risk Management Agency was not amenable to direct action under the provisions of La.R.S. 22:655. Thus, the Risk Agency in this case cannot be held to be a "de facto" insurer and is not liable to the plaintiff for worker's compensation payments.[2]

WHAT IS THE EXTENT OF PLAINTIFF'S DISABILITY?
The district court, after careful assessment of the evidence presented, concluded that the plaintiff was totally and permanently disabled. The brain damage which she sustained with its resulting impairment justifies such a conclusion. The Town challenges this finding as unsupported by the evidence, but our review of the record causes us to hold that there is no merit to the Town's challenge. As such, we *1095 adhere to the conclusions reached by the trial judge, and certainly there is no manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).

IS PLAINTIFF ENTITLED TO RECOVER PENALTIES AND ATTORNEY'S FEES?
Plaintiff argues that she is entitled to recover for penalties and attorney's fees due to the failure of the defendants to pay any worker's compensation benefits, even after suit was filed against them. She maintains that this claim is clearly compensable under the worker's compensation statute, and that an award of $7,500.00 would be appropriate.
La.R.S. 23:1201.2 states that where an employer fails to pay worker's compensation benefits within sixty days after receipt of written notice, that employer shall be liable for penalties and attorney's fees where such failure to pay is found to be "... arbitrary, capricious, or without probable cause ..." In Smith v. Borden, Inc., 413 So.2d 701 (La.App. 4th Cir.1982), the construction of this provision by the jurisprudence was explained:
"Jurisprudence has construed this statute to mean that where there is a bona fide factual dispute as to whether the employee's disability was work-related, the employer has `probable cause' to refuse to pay workmen's compensation benefits.... Also applicable here is the rule that the statute, being penal in nature, must be strictly construed, ... and that the issue of whether the refusal to pay compensation benefits was arbitrary, capricious or without probable cause is a factual determination which must be determined upon the merits of each case....." [Citations omitted].
Other jurisprudence has held that reliance upon a valid defense is not an arbitrary or capricious refusal to pay as required by statute. Dupont v. Ebasco Services, Inc., 411 So.2d 605 (La.App. 4th Cir.1982).
The determination of whether or not Ms. Lonzo was entitled to recover worker's compensation benefits whatsoever was an issue of considerable complexity, to which each of the defendants relies upon quite valid defenses. There was clearly a bona fide factual dispute concerning whether or not the plaintiff's disability was work-related. Under these circumstances we feel that the trial judge correctly determined that the defendants' refusal to pay benefits was not arbitrary, capricious, or without probable cause. Therefore, he properly denied the plaintiff recovery of penalties and attorney's fees.

WHAT AMOUNTS OF COMPENSATION IS THE PLAINTIFF ENTITLED TO RECOVER?
The trial judge awarded the plaintiff disability benefits in the amount of $28.00 per week and medical benefits totalling $56,000.00. On appeal, the plaintiff seeks to have disability payments increased to $128.00 per week and medical benefits increased to $75,204.94.
La.R.S. 23:1221(2) allows payment for injuries producing total and permanent disability in the amount of 66 2/3% of wages during the period of such disability. We have previously determined that the Town and the Parish along with its insurer, Rockwood, are equally responsible for payment of compensation to plaintiff. The Town of Marksville paid Ms. Lonzo $257.00 per month and the Avoyelles Parish Police Jury paid her $100.00 per month. The plaintiff is thus entitled to receive weekly compensation benefits in the amount of $59.50 per week (66 2/3% of $357.00 per month).
Insofar as the medical benefits payable to the plaintiff are concerned, the trial judge determined that $56,000.00 in expenses had been proven at the time of trial. We find no manifest error in his determination of medical benefits which plaintiff was entitled to recover, and we thereby deny the plaintiff's request for an increase in the amount recoverable by her.

DECREE
For the above and foregoing reasons, the judgment of the trial court is recast as follows:
*1096 It is Ordered, Adjudged, and Decreed that there be judgment herein in favor of the plaintiff, Christel S. Lonzo, and against the Town of Marksville, the Parish of Avoyelles, and Rockwood Insurance Company, in the full sum and amount of $59.50 per week for total and permanent disability as defined in La.R.S. 23:1221(2) with legal interest from the date of judicial demand until paid, and in the full sum and amount of $56,000.00 for medical benefits and travel expenses with legal interest from date of judicial demand until paid, such sums to be paid one-half by the Town of Marksville, and one-half by the Parish of Avoyelles and Rockwood Insurance Company, collectively.
It is further Ordered, Adjudged, and Decreed that all claims of Christel S. Lonzo against the State of Louisiana, through the Department of Public Safety, and the Louisiana Municipal Risk Management Agency, be and the same are hereby dismissed with prejudice.
It is further Ordered that the expert witness fee of Dr. R.R. Michel be set at $150.00, that of Dr. John Patton be set at $75.00, and that of Dr. Charles Drake be set at $75.00.
It is further Ordered that all demands of the plaintiff for penalties and attorney's fees be and the same are hereby denied.
Costs are assessed as follows: At trial, fifty percent against the Town of Marksville, and fifty percent against the Parish of Avoyelles and Rockwood Insurance Company, collectively. On appeal, forty percent against the Town of Marksville, forty percent against the Parish of Avoyelles and Rockwood Insurance Company, collectively, and twenty percent against Christel S. Lonzo.
AFFIRMED IN PART, REVERSED IN PART, AND JUDGMENT RECAST AND RENDERED.
GUIDRY, J., dissents and assigns written reasons.
GUIDRY, Judge, dissenting.
In his written reasons for judgment, the trial judge summarily concluded that the plaintiff suffered an accidental injury in the course and scope of her employment which completely disabled her. Without further determining that the accident was job related, he found that the plaintiff was entitled to compensation benefits. My brethren of the majority affirm. I respectfully disagree for the reasons which follow.
In the recent case of Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La. 1982), the Supreme Court undertook a comprehensive review and analysis of the law and jurisprudence bearing on the requirements for a successful claim for workers compensation in heart attack, cerebral hemorrhage and similar cases. The court observed that an accident occurs in the course of employment when it happens during the time of employment and at a place contemplated by the employment.
In the present case, this much is admitted by the defendants. However, such a showing does not alone satisfy Louisiana's dual requirement. There is an additional requirement, i.e., that the accident must arise out of the employment. In Guidry, supra, the court reasserted the requirement of showing a causal connection between the employment and the accident and repudiated the premise that a mere showing that the plaintiff suffered injury during working hours gives rise to a presumption that the injury was causally related to the employment. In the language of the court:
"There is no presumption, however, that a vascular accident occurring on the job is caused by the employment. There must be a causal link between the employment, or the work, and the accident. And of course, the law imposes upon the plaintiff in compensation cases, as it does in other civil cases, the burden of proving that causal link by a preponderance of the evidence. Prim v. City of Shreveport, 297 So.2d 421 (La.1974).
This burden of plaintiff's is to show by a preponderance of the evidence that the work effort, stress or strain in reasonable probability contributed in some degree to the heart accident. Anything less and it can hardly be said that the accident arose *1097 out of the employment or that the employment in any measure contributed to the accident." Guidry, supra, at 633.
The Supreme Court then set forth a test for the degree of physical exertion, stress or strain necessary to make a prima facie showing that the accident arose out of or was connected with the employment. However, they underscored in a footnote that the standard for meeting this burden of proof in heart compensation cases involving mental or emotional stress is different and is that enunciated in MacDonald v. International Paper Company, 406 So.2d 582, 583 (La.1981) and Ferguson v. HDE, Inc., 270 So.2d 867 (La.1972); Guidry, supra, at 633, footnote 17.
In the Ferguson case, the plaintiff worker suffered a stroke while engaged in an angry discourse concerning his first paycheck, which was substantially less than expected. The holding of Ferguson, which overruled Danziger v. Employers Mutual Liability Insurance Company of Wisconsin, 245 La. 33, 156 So.2d 468 (1963), was that physical disability resulting from extraordinary mental or emotional causes qualified as an injury by accident and was compensable. Although the focus in Ferguson was on whether or not there was an "accident", not on whether or not the "accident" was job related, this holding was placed in perspective by the MacDonald case, supra. See Guidry, supra, at 631, footnote 11.
The court in MacDonald, supra, held that death of heart attack produced by extraordinary mental or emotional work-related stress is compensable. The evidence in MacDonald was that the employee for several weeks before his death, was subjected to extraordinary emotional and mental stress associated with the impending closure of the mill at which he worked, the possible termination of his job, and the increased difficulty of his job because of shorthanded, dilatory work crews and poorly maintained equipment. In addition, two physicians testified that this work-related stress was a cause of the employee's heart attack.
The MacDonald court stated the test as follows:
"Whether the work-related mental and emotional stress was extraordinary or any greater than that of everyday life and whether this stress was the real cause of the employee's heart attack..."
After an exhaustive and meticulous examination of the record in this case, I conclude that under the test enunciated in MacDonald, the plaintiff has failed to prove by a preponderance of the evidence that the accident of which she complains arose out of her employment. Therefore, I would find that the trial judge committed manifest error in determining that the accident was compensable. My aforestated conclusion is based on the total lack of evidence in the record that Ms. Lonzo was under stress, extraordinary or otherwise, work related or personal, when the accident occurred.
Judge Bennett was with Ms. Lonzo when the accident occurred. He testified at trial that although previously when he gave his deposition he had been unable to recall the specific matter he was discussing with Ms. Lonzo immediately before the rupture, he now remembered. He stated:
"As a matter of fact, I recall the discussion I was having with her. And, apparently, it was the cause of her concern. Sometime back, I received a call from Irma Young, who is the police officer, telling me that a fellow by the name of Jerard Prior was coming to file charges against the Sheriff's Deputy, or had come to file charges againstdiscussed it with Irma Young and Christel Lonzofor an alleged beating, either in the jailwell, it wasn't in the jailboth in the jail and I think on the street. And they were concerned about what type of charges to file, and about whether first we should accept the charge, since the Sheriff's Deputy was involved. And I advised `em that it was our duty to accept the charge. So they didtook the charge and prepared a warrant and brought it to me. As a result, of that, there was a considerable, sort of unrest, in the police department, amongas between them and the Sheriff's Department, and she was discussing that situation with me, immediately prior to her sickness." (Tr. pp. 160-1).
*1098 The plaintiff relies solely on the above trial testimony of Judge Bennett to show that the accident was produced by work related stress. This testimony evidences only that in the course of a routine meeting, Ms. Lonzo discussed with Judge Bennett a situation which caused a considerable amount of unrest between the police department and the Sheriff's Department. The judge's testimony that "apparently, it was the cause of her concern" is mere conjecture and not a matter of which he had personal knowledge. Judge Bennett, in his testimony, never indicated that Ms. Lonzo expressed or evidenced in her behavior the slightest amount of emotional or mental stress as a result of the aforestated incident or their discussion of it, except to say that immediately prior to the stroke she became nervous and agitated. I do not find it remarkable that Ms. Lonzo should become agitated or nervous while experiencing a ruptured aneurysm.
The plaintiff called several other witnesses to testify on her behalf, including Earl Greenhouse, the Chief of Police and Ms. Lonzo's supervisor as a police officer; Irma Young, a fellow policewoman and close friend; and, Uraldine Sampson, her sister. None of these witnesses testified to anything which would evidence that Ms. Lonzo was under stress, job related or personal.
Judge Bennett testified that it was Ms. Young with whom Ms. Lonzo was working on charges filed against the Sheriff's deputy. Neither Ms. Young nor Chief Greenhouse testified that Ms. Lonzo had ever evidenced any stress as a result of that incident.
Furthermore, Ms. Lonzo herself never testified that she was agitated about anything that concerned her employment. Ms. Lonzo was unable to recall the events of her own emotional state on the morning of the accident because of retrograde amnesia. However, this amnesia affects only the memory immediately preceeding the accident. The situation relied on by Ms. Lonzo's counsel as the source of work related mental or emotional stress, i.e., the charges brought against a sheriff's deputy, began over two months before Ms. Lonzo's accident. Nevertheless, Ms. Lonzo failed to testify that this situation had ever been a source of mental or emotional stress to her. In fact, the only testimony of the plaintiff concerning the existence of work related stress was negative. Although testifying generally, Ms. Lonzo stated in her deposition as follows:
"Q. Okay, and did you say your work was very strenuous?
A. No, Sir.
Q. In fact you would
A. I mean, you know, once you learn something it's just like doing housework. It's a routine and that's the way I felt, something very routine. It was an every day thing. You know, you would take charges, handle traffic tickets."
The two medical experts who testified were Drs. Patton and Drake, both boardcertified specialists in neurosurgery.[1] Dr. Drake is a pre-eminent physician in the specialty of neurosurgery who has pursued a particular interest in cerebral aneurysms. He operated on Ms. Lonzo and found the aneurysm to be of the saccular or "berry" variety. Dr. Drake provided us with a definition of aneurysm in his deposition, describing it as a blister that forms in the arteries at the crotch of a branching, consisting of a blowout (or ballooning) of the interlining of the artery, through the muscular or elastic coats of the artery. The blow-outs gradually enlarge until the wall becomes thin enough to rupture.
I find no essential conflict in the testimony of the two doctors. Both agreed that the origin of aneurysms is unknown. They both agreed that, in many cases, those emotional and physical stresses in life that raise blood pressure can precipitate the rupture of an aneurysm, but that aneurysms may *1099 rupture for no apparent reason such as those that rupture during sleep. Neither Dr. Patton nor Dr. Drake advanced an expert opinion that the rupture of the aneurysm in this case was caused by or had a causal relation to any employment related activity in which the plaintiff was engaged. In short, there is no evidence of medical causation which relates to the particular facts of this case.
Although I entertain the utmost sympathy for Ms. Lonzo's condition, my careful examination of the record compels me to conclude that plaintiff has failed to prove by a preponderance of the evidence that her vascular accident was in any way causally connected with her employment. Under such circumstances, plaintiff is not entitled to benefits under the workers compensation act. Considering this conclusion, I would not reach the other issues presented on appeal.
For these reasons, I respectfully dissent.
NOTES
[1] The plaintiff cites as error the trial court's admission into evidence of a portion of Doctor Drake's deposition in which he commented on certain statements made by Judge Bennett in a deposition which was apparently never admitted into evidence. However, since we have determined that the plaintiff has a compensable claim, we deem it unnecessary to consider whether or not the district court should have admitted Doctor Drake's deposition in its entirety.
[2] We express no opinion herein with regard to the potential liability of the Risk Agency to the Town as we were not presented with this issue on appeal.
[1] Dr. Richard R. Michel, plaintiff's family physician also testified, however, his testimony did not relate to job connexity of the vascular accident but only to the extent of the disability occasioned by the accident.