FORET, Judge.
This is a suit for worker’s compensation. Plaintiff, Sherman Edwards, filed suit against defendants, Exxon Company, U.S.A. and Petroleum Casualty Company, seeking worker’s compensation benefits, penalties, and attorney’s fees. After trial on the merits, the trial court rendered judgment in favor of plaintiff, finding that he was entitled to worker’s compensation benefits. The court, however, denied plaintiff’s request for penalties and attorney’s fees. Defendants have appealed. The sole issue raised by this appeal is whether a stroke suffered by plaintiff during hours of employment arose out of that employment.
FACTS
At the time of his stroke, plaintiff was a senior operator at defendant Exxon’s Opel-ousas gas plant. On June 8, 1981, plaintiff was working a daylight shift. Sometime that morning, plaintiff made a round of the plant, recording readings taken from instrumentation located around the plant. At approximately 9:00 o’clock, plaintiff discovered and resolved a minor problem with a frozen valve. Immediately afterwards, plaintiff picked up and emptied a five-gal-Ion bucket with glycol condensate in it. As plaintiff emptied the bucket, he claims that he felt a burning sensation in the back of his head and became dizzy.
Plaintiff completed his rounds and returned to the control room. Apparently he showed no signs of physical distress and even joked with his co-employees. Plaintiff sat down at his desk and began to make a phone call. It was at that moment that he apparently suffered his stroke. His coworkers saw him slump over his desk and called for the ambulance.
Plaintiff was treated at Opelousas General Hospital by Dr. Daniel Buller, a vascular surgeon. Plaintiff’s condition, however, deteriorated, and Dr. Buller conferred with Dr. Thomas Bertuccini, a neurosurgeon. Plaintiff was transferred to the Lady of Lourdes Hospital in Lafayette, Louisiana, where Dr. Bertuccini conducted neurological tests and determined that plaintiff had experienced a brain stroke arising from a cerebellar hemorrhage or blood clot. Plaintiff was hospitalized for 37 days and, after his release, underwent rehabilitation and treatment for the effects of the stroke. As a result of the stroke, plaintiff suffers a mild to moderate problem with coordination on the right side of his body.
Plaintiff requested and was granted a disability retirement by Exxon. He also requested worker’s compensation benefits, but this request was denied by Exxon and defendant, Petroleum Casualty Company. Plaintiff then filed this lawsuit.
DID PLAINTIFF’S DISABILITY ARISE OUT OF HIS EMPLOYMENT?
A stroke, such as the one suffered by plaintiff, satisfies the statutory requirements of “personal injury by accident.” Lonzo v. Town of Marksville, 430 So.2d 1088 (La.App. 3 Cir.1983), writs denied, 438 So.2d 573, 576 (La.1983). Nevertheless, in order to be compensable under the worker’s compensation statute, such a personal injury must arise out of and in the course of the claimant’s employment. LSA-R.S. 23:1031. In the case before us, there is no *230 doubt that plaintiff’s stroke occurred in the course of his employment. What is in dispute is whether plaintiff’s stroke arose out of his employment.
An accident arises out of employment only if the accident is a result of some risk to which the employee is subject in the course of his employment and which he would not otherwise have been subject to. Guidry v. Sline Indus. Painters, Inc., 418 So.2d 626 (La.1982). In the case of a vascular accident, the worker must prove a causal link between his work and the accident. Where physical exertion, stress, or strain is alleged to have caused the vascular accident, the worker must show that the accident occurred while he was engaged in work activities which entail physical exertion, stress, or strain greater than that involved in everyday, non-employment activity. Guidry v. Sline Indus. Painters, Inc., supra. On the other hand, where there is an allegation that mental and emotional stress caused the accident, the worker must show that the vascular accident was a product of extraordinary mental and emotional stress related to his employment. McDonald v. International Paper Co., 406 So.2d 582 (La.1981). In either case, however, the worker is not relieved of the necessity of presenting evidence of medical causatijon. Guidry v. Sline Indus. Painters, Inc., supra, page 633, footnote 16. A claimant must establish medically that employment exertion contributed to his vascular accident. Schneider v. Strahan, 449 So.2d 1338 (La.1984). In the case before us, plaintiff failed to do so, and the trial court’s apparent conclusion that the medical evidence demonstrated a causal link between plaintiff's employment exertion and his stroke was clearly wrong.
Dr. Bertuccini, testifying on behalf of plaintiff, did not believe that plaintiff’s stroke was caused by his work. Although at one point in his testimony, Dr. Bertuccini did say that a very stressful situation could be responsible for “tipping the bucket” and causing plaintiff’s stroke, this isolated statement does not apply to plaintiff’s situation, nor does it fairly represent the totality of the doctor’s testimony. In its written reasons for judgment, the trial court characterized the work which plaintiff did on the morning of his stroke as routine and the problem with the frozen valve as minor. We agree with this characterization. Nothing in the record indicates that plaintiff was involved in a very stressful situation on the morning of his stroke. More importantly, at several points in his deposition, Dr. Bertuccini clarified, if not contradicted, his statement that a very stressful situation could be responsible for “tipping the bucket.” At one point in his testimony, Dr. Bertuccini answered the question:
“Q. If he had stayed home the next day, not reported to work, would he have been less likely to suffer the stroke?
A. I can’t say yes with any degree of probability. I can only say that is possible. In other words, the stresses of his job may have contributed, as I mentioned earlier with other risk factors being present, to tipping the scale such that he went on and had a stroke, but I can only say that that is possible and not probable. He may have been lying home in bed at night asleep and had a stroke like this. We see that from time to time. The degree of activity that a patient is involved in is not a definite risk factor in terms of the onset of a stroke except in some very specific incidents, and I don’t believe this was one of them.” (Emphasis Supplied).
At another point, Dr. Bertuccini testified:
“The degree of activity that a patient is involved in is not a definite risk factor in terms of the onset of a stroke except in some very specific incidents, and I don’t believe this was one of them.
Q. This may be repetitive but would you please say agáin why you don’t believe this was one of those incidents?
A. Because there was no evidence that he had a congenital blood vessel abnormality that would predispose him to having incurred a stroke as a result of a stressful job situation or a stress of any sort whether it be anxiety or emotional or physical.”
*231 At still another point, Dr. Bertuccini testified:
“Q. Doctor, in your medical opinion can you state with reasonable medical probability that Mr. Sherman Edwards’ stroke was not caused by his employment?
A. Yes.”
It is clear from the above statements that Dr. Bertuccini was of the opinion that there was most probably no causal connection between plaintiff’s stroke and his work activities. On the other hand, defendant’s expert, Dr. John D. Jackson, testified, une-quivoeably, that, in his medical opinion, plaintiff’s stroke was not caused by his employment. Dr. Jackson testified as follows:
“A Well, based on those facts, I would have to say that it’s reasonable to feel that the man had an arteriosclerotic hemorrhage or breakage of one of his blood vessels that started the night before and gradually worsened, and it’s not related to any on-the-job injury or stress or trauma.
Q One further question, Doctor. In your medical opinion, can you state with reasonable medical probability that Mr. Edwards’ stroke was not caused by his employment?
A I can, yes.”
Plaintiff failed to establish medically that there was any causal connection between the stress, mental or physical, of his work and his stroke. Accordingly, we must reverse the trial court’s award of worker’s compensation benefits.
DECREE
For the foregoing reasons, the judgment of the trial court is reversed. Costs at the trial level and on appeal are assessed against plaintiff-appellee, SHERMAN EDWARDS.
REVERSED.
DOMENGEAUX, J., votes to reverse but would nevertheless remand for additional evidence which the district court left the record open for.