DOMENGEAUX, Judge.
Tilmon W. Reid brought this suit to recover worker’s compensation benefits for disability resulting from a stroke allegedly arising out of his employment. Named as defendant is Mr. Reid’s employer, Gamb, Inc. d/b/a Stark’s Family Restaurant.
The trial court rendered judgment in favor of Stark’s, dismissing Mr. Reid’s claims. It concluded that Mr. Reid failed to prove that his employment with Stark’s caused or contributed to causing his stroke.
On appeal, we must decide whether the trial court erred in failing to find that Mr. Reid’s stroke arose out of his employment with Stark’s.
On January 3, 1984, Mr. Reid suffered a cerebral vascular accident, more commonly called a stroke. At the time of his accident, he was the district manager of Stark’s south-central division with supervisory responsibility over stores in Pineville, Port Allen, Bunkie, Donaldsonville, and Marksville. He had served as district manager since December 15, 1982.
At the time of the stroke, Mr. Reid was preparing the Donaldsonville store for its grand opening. On January 1, 1984, Mr. Reid and his wife were in Donaldsonville assisting with the placement of equipment and tables. On the evening of January 2, 1984, Mr. Reid drove his wife from Donald-sonville to their home in Marksville so that they could get their six children ready to return to school the following day. Early on the morning of January 3, 1984, Mr. Reid returned to the Donaldsonville store to conduct employment interviews, oversee the final placement of the equipment, and make last minute preparations for the grand opening. At the end of the day, after helping stock the storeroom, Mr. Reid called his wife at 6:00 P.M., picked up a snack at a nearby convenience store, and checked into a motel room which he shared with the Stark’s equipment manager. Between 9:00 P.M. and 10:00 P.M. Reid noticed a numbness in his right arm and hand, but disregarded the symptoms, thinking they were temporary, and went to sleep. When Mr. Reid woke up the following morning he could not hold up his right arm and his mouth was drawn. Realizing he needed medical attention, Mr. Reid told the equipment manager that he was not well and then drove himself to Marksville, a distance of approximately 100 miles. At about 10:30 A.M. he was examined at Hu-mana Hospital and referred to a general practitioner for treatment that afternoon. In the early afternoon, Mr. Reid saw another physician, Dr. R.R. Michel, who determined that Reid had suffered a cerebral vascular accident, and made arrangements for his admission to Rapides General Hospital. Dr. C. Babson Fresh, a neurosurgeon, treated Mr. Reid during his hospitalization, and, after further testing, diagnosed him as having suffered a left posterior frontal infarct (stroke). After three days of hospitalization, Mr. Reid was discharged and *646 placed in the continuing care of an Avo-yelles physician.
Stark’s paid worker’s compensation benefits of $245.00 a week until March 24, 1984. At Stark’s request Dr. John A. Worley, a cardiologist and internist, examined Reid on March 7, 1984. On the strength of Doctor Worley’s March 23, 1984, report, which stated that Mr. Reid’s stroke was not employment-related and that he was able to return to work, Stark’s discontinued worker’s compensation benefits and only paid Doctor Worley’s medical bill.
In the present case, the trial court received evidence through the in-court testimony of Mr. Reid, Mrs. Reid, Dr. Paul Ware, and several Stark’s employees, and through the deposition testimony of Dr. John Worley, Dr. Davidson Texada, Jr., Dr. C. Babson Fresh, Dr. Arsham Naalbandian, and Dr. L.J. Mayeux.
In Louisiana, appellate review in civil cases extends to both law and facts. La.Const. Article V, § 10(B). When reviewing factual findings based on testimony adduced in open court, we must follow the clearly wrong standard of Arceneaux v. Domingue, 865 So.2d 1330 (La.1978); when reviewing factual findings based on depositions, we must only determine the sufficiency and preponderance of the evidence. Brousseau v. Tucker, 479 So.2d 446 (La.App. 1st Cir.1985); Dickerson v. Zurich-American Insurance Company, 479 So.2d 571 (La.App. 1st Cir.1985); Kilgore v. Western Casualty & Surety Company, 462 So.2d 1366 (La.App. 3rd Cir.1985), writ denied, 466 So.2d 470 (La.1985). Therefore, when evidence is received through in-court testimony and deposition testimony, as in this case, the appellate court must determine the basis for the trial court’s factual finding before it can choose the correct standard of review. As will be shown more fully hereinafter, the trial court received in-court testimony on the issue of whether Mr. Reid’s stroke arose out of his employment, and we, therefore, must apply the manifest error standard of review.
The requirements for a successful claim for worker’s compensation are set out in La.R.S. 23:1031 as follows:
“If an employee not otherwise eliminated from the benefits of this Chapter, receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or person hereinafter designated.” (Emphasis supplied).
The occurrence of a cerebral vascular accident, or stroke, is an accidental injury within the context of La.R.S. 23:1031. Leleux v. Lumbermen’s Mutual Insurance Company, 318 So.2d 15 (La.1975); Lonzo v. Town of Marksville, 430 So.2d 1088 (La.App. 3rd Cir.1983), writ denied, 438 So.2d 573, 576 (La.1983).
Generally, an accident occurs during the course of employment when it happens during the time of employment and at a place contemplated by the employment. Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La.1982). In Davis v. Home Insurance Company, 291 So.2d 455 (La.App. 2nd Cir.1974), the court found that an insurance sales representative, who was completing a three-day business trip to Shreveport, was within the course of his employment when, while preparing to check out of his motel, he tripped as he stepped from the threshold of his room and injured his back. In reaching this conclusion the court quoting from Gauthreaux v. Life Ins. Co. of Georgia, 256 So.2d 832 (La.App. 3rd Cir.1972), stated:
“The general rule is that an injury suffered by an employee away from his employer’s premises while going to or returning from work, does not arise out of and in the course of his employment. This general rule, however, is subject to a number of exceptions. It does not apply, for instance, where the employee is a traveling salesman, or where he is required to travel from place to place in the performance of his duties and to provide his own means of transportation in doing so. In such an instance there is no fixed place of employment and his hours *647 necessarily are irregular. If the employee sustains an injury while traveling under those circumstances, although not on the employer’s premises, his injuries will be considered as having been sustained in the course of his employment if he was then engaged about his employer’s business, and not merely pursuing his own business or pleasure, and the necessities of his employer’s business required him to be at the place of the accident when it occurred.”
In this case Mr. Reid’s employment required that he be in Donaldsonville to prepare for the grand opening of a new restaurant. His home in Marksville was approximately 100 miles away. In staying in a Donaldsonville motel overnight, Mr. Reid was pursuing his employer’s business interests, not his own business or pleasure. We conclude, therefore, that Mr. Reid was in the course of his employment within the meaning of La.R.S. 23:1031.
A showing that an employee’s accident occurs in the course of employment, however, does not satisfy Louisiana’s additional requirement that the accident arise out of the employment. La.R.S. 23:1031; Guidry v. Sline Industrial Painters, Inc., supra, at page 628. The Louisiana Supreme Court, in Guidry, stated:
“Arising out of employment contemplates the accident’s being the result of some risk to which the employee is subjected in the course of his employment and to which he would not have been subjected had he not been so employed. - Furthermore, this risk of employment from which injury resulted should be one greater than that occasioned by a person not engaged in the employment....” [Footnotes and citations omitted] 418 So.2d at 628, 629.
In Lonzo v. Town of Marksville, supra, this Court examined the Guidry case as it applied to a claim for benefits after the claimant suffered a stroke in the course of her employment. In Lonzo this Court said:
“The Supreme Court [in Guidry] then set forth a test for the degree of physical exertion, stress or strain necessary to make a prima facie showing that the accident arose out of or was connected with the employment. However, they underscored in a footnote that the standard for meeting this burden of proof in heart compensation cases involving mental or emotional stress is different and is that enunciated in McDonald v. International Paper Company, 406 So.2d 582 (La.1981), and Ferguson v. HDE, Inc., 270 So.2d 867 (La.1972). Guidry, supra at 633, at footnote 17. Specifically, the Court in Guidry stated:
‘Most recently, McDonald v. International Paper Company, 406 So.2d 582 (La.1981) placed the Ferguson decision in perspective as precedent for the proposition that death by heart attack produced by extraordinary mental or emotional work-related stress is com-pensable.’ [at 632, footnote 11].
While the requirement in McDonald that the stress be ‘extraordinary’ was questioned by the Second Circuit in Beaty v. Thiokol Corporation, 414 So.2d 1292 (La.App. 2nd Cir.1982), at 1294, [writ denied, 416 So.2d 114 (La.1982)] footnote 2, we find the Supreme Court pronouncements in Ferguson, McDonald, and Guidry controlling in this case.”
Therefore, a plaintiff must prove that the work-related mental or emotional stress was extraordinary in order to make a prima facie showing that the stroke arose out of his employment.[1]
*648 In the present case, the trial court concluded that the degree of work-related mental and emotional stress which Mr. Reid actually experienced did not reach that level necessary to show that his stroke arose out of his employment. In addressing the evidence relevant to this issue, the trial judge made the following observations in his written reasons for judgment:
“There is much testimony by many Stark’s employees that the plaintiff's job was simply not as strenuous or stressful as Doctor Ware was told. However, all of that testimony can be discounted and we can rely upon the testimony of the plaintiff and his wife. The most significant thing about the plaintiffs testimony is what he did not testify to. He did not testify that he was nervous about his work; or that he was worried about his work; or that he was overworked; or that he was worried about his job; or that driving made him nervous; or that he had trouble with any of his five managers; or to any other factors which suggest the type of stress described by Doctors Naalbandian, Fresh, and Texada as potentially dangerous. On the contrary, he liked his job; he liked his managers; and he liked his bosses. The history given Doctor Ware that plaintiff had only Christmas day and Thanksgiving day off during an entire year was clearly an exaggeration. Even the plaintiff himself testified that he worked six days a week, not seven. The evidence disclosed clearly that the plaintiff was entitled to vacation time but apparently elected not to take a vacation during the year he served as district manager. The plaintiff’s own testimony does not dispute this.
As pointed out in plaintiff’s memorandum, it is clear that one can like a job even though it is stressful. Clearly, a surgeon, a policeman, a trial lawyer, an airline pilot, or a corporate executive may love their work and still be under great stress. But in the present case, the only stress suggested is that the plaintiff had long hours, did a good bit of traveling and was paid based upon production of his five managers. Again, none of those factors are shown to be significant by the evidence. The issue of how many miles were driven was clearly over-emphasized by both plaintiff and defendant and it is not considered important by the court since there is nothing to suggest that driving was stressful to plaintiff even by his own testimony or that of his wife who traveled with him on almost half of his trips.
The jurisprudence emphasizes the importance of a claimant’s activities on the day that the first symptoms are noticed. Accordingly, the testimony relating to the plaintiff's activities on January 3, 1985, [sic] is very important. There was nothing out of the ordinary which occurred; no disagreements, no accidents, no problems of any kind. The fact that plaintiff described it as a good day is not important. A good day is not necessarily without stress. But what is important is the actual description of the day’s activities. The evidence of that day's activities is clearly negative of any showing of stress.
*649 Although the importance of the attack occurring on the job or while off duty is debatable, the jurisprudence clearly recognizes that factor as important. The plaintiff was off duty when the first symptoms evidenced themselves and that is a factor which may not be overlooked. His counsel argues that he was on call 24 hours a day, thus suggesting that he was on the job when the stroke occurred. But every worker in any position of responsibility is subject to being called during off duty hours to remedy a problem. This does not mean that he is on the job 24 hours a day. The evidence does not show that the plaintiff was ever called away from his off duty time to report to work even though, as a district manager, he was subject to such calls.”
In reaching a conclusion concerning the amount of work-related stress Mr. Reid was under, the trial judge relied heavily on the in-court testimony of Mr. Reid and his wife. Therefore, we are not in as good a position as the trial court to decide this factual issue and must apply the manifest error standard of review of Arceneaux v. Domingue, supra, as stated above.
Our review of the record shows that the evidence amply supports the trial judge’s conclusions as stated above and we cannot conclude that he was clearly wrong in his finding concerning the amount of job related stress Mr. Reid actually experienced.
In addition to this factual finding that Mr. Reid’s work-related emotional stress was not extraordinary, the trial judge also concluded that the medical evidence failed to show a causal connection between Mr. Reid’s employment and his cerebral vascular accident. The trial court’s evaluation of the medical evidence, as stated in his written reasons for judgment, is fully supported by the record and quoted here, with approval:
“Because of the sheer volume of medical testimony and reports, only the highlights of that evidence will be discussed.
The testimony of Dr. Paul Ware is clearly the most favorable to plaintiff’s assertion that his CVA was caused or contributed to by job stress. Doctor Ware is a specialist in psychiatry and neurology and during his eighteen years of private practice, he estimated that about 65% of his practice was in psychiatry and 35% in neurology. He indicated that in his private practice, he has been particularly interested in stress as a cause of physical ailments. At the present time, he serves on the faculty of the LSU-Shreveport Medical School as clinical professor in the Department of Family Practice and Comprehensive Care with appointments in the Department of Psychiatry and Neurology. Doctor Ware testified that based upon the job history related by the plaintiff and the plaintiff’s wife, that he believed that job stress contributed to the stroke. It goes without saying that the history which serves as the basis for that conclusion becomes very significant. The defendant contends that these conclusions were based upon incorrect information, particularly the information as to the nature of his job and the factors which would tend to be stressful.
Doctor Ware testified that he felt the etiology of the stroke was a spasm of a small blood vessel that infarcted in the area of the brain and that it was not caused by an embolus or a thrombus. He says that there is much more of a liklihood of stress as a factor in a vasos-pastic or ischemic stroke than in strokes brought on by embolus.
Doctor Ware testified that the plaintiff and his wife told him that plaintiff had been working for Stark’s about three years and during that time he had no vacation and during the last year he had only two days off during the entire year, those days being Thanksgiving and Christmas. They told him that the plaintiff worked ten to twelve hours a day, seven days a week. Doctor Ware said ‘if that history is in any way accurate, [it] certainly does appear to be a stressful job, both physically and emotionally from my preception of that.’ He felt that hy *650 pertension was a factor and because there was no family history of hypertension, he considered the stress factor to be significant. Doctor Ware also testified that at the time he examined the plaintiff, that he was not physically able to return to work.
Dr. John Worley, whose speciality is internal medicine and cardiology, was clearly the most outspoken in supporting the defendant’s contentions. As stated earlier, it was on the basis of Doctor Worley’s opinion of March 23, 1984, that weekly benefits and medical expenses were stopped. His letter opinion stated that there was no relationship between the stroke and plaintiff’s employment. In his deposition, he testified that there was no evidence of brain damage; that plaintiff suffered ‘a little embolus, very minute’; that stress is a factor only in transient ischemia; and that he was not aware that anything in medical literature that would link cerebrovascular accidents with employment.
Doctor Worley’s qualifications are not questioned and he is well known and highly respected in the field of cardiology. However, based upon the testimony and reports of the other medical experts, he clearly underestimated and understated the seriousness of plaintiff’s condition. Bypassing for the moment the issue of connexity between employment and the stroke, and based upon the reports and testimony of the other medical experts, the court finds that at the time Doctor Worley examined the plaintiff on March 7, 1984, that plaintiff had neurological deficits which were not diagnosed and in the opinion of the court this diminishes the force of his testimony.
The testimony of Dr. Davidson Texada, Jr., a neurologist and psychiatrist, was perhaps more articulate in supporting the defendant’s position relating to the cause of the plaintiff’s condition. He testified on direct examination that in his opinion, stress could not cause the type of stroke suffered by plaintiff. In further testimony, however, he acknowledged that there could be a relationship by way of hypertension, that is, stress causing hypertension and hypertension aggravating other factors with the stroke being caused by a combination of factors. He nevertheless persisted that in his opinion, there was no causal relationship between the plaintiff’s employment and his stroke.
The testimony of Dr. C. Babson Fresh, a neurologist, included a comprehensive discussion of the various kinds and causes of strokes. However, based upon his limited knowledge of the plaintiff’s medical and work history, he readily admitted to not having an opinion as to what caused the stroke. He was certain, however, that plaintiff suffered an is-chemic type stroke and not a hemorragic type stroke. He testified that he could not express an opinion as to the plaintiff’s ability to resume his former duties because he had not examined him since March, 1984. He felt that plaintiff did not suffer a vasospastic stroke because there was no evidence of diastolic hypertension. He acknowledged the possibility that his diastolic pressure may have been higher prior to the stroke but emphasized that a diastolic pressure of 130 to 140 would be the normal range causing a vasospastic stroke. Although he did not diagnose a vasospastic stroke, he discussed its possible causes and said that one of the causes was a person pushing himself to the limit of both physical and mental endurance. Later in his testimony he again said that for stress to be a factor it would have to be extreme; it would have to be both physical and mental; and it would have to cause a very high level of diastolic pressure.
Doctor Arsham Naalbandian, a neurologist, was questioned vigorously on the issue of the relationship of the plaintiff’s job to his stroke. He admitted that he was not well versed with the plaintiff's job duties but based upon what he was told, he could not find that there was such a relationship. He avoided a firm opinion on the issue of stress except to say that it was a factor in hypertension and that hypertension can cause a stroke. Other than via hypertension he was un *651 willing to find a connection. In summary he said he did not know the cause of plaintiff’s stroke but he would not say that it was not stress. On the issue of disability he was not certain but indicated that plaintiff could probably perform many of his job requirements.
Doctor L.J. Mayeux, the plaintiff’s family physician, treated him as an outpatient after he was discharged from the hospital. In his deposition he testified that he did not have sufficient information to render an opinion as to the role of stress and said that ‘no one can really give you any figures or facts concerning the role that stress has in a CVA.’ ”
In reaching his conclusion that the medical evidence does not support a finding of a causal relationship between Mr. Reid’s employment and his stroke, the trial judge stated that Doctor Ware, who testified in-court, placed more emphasis on the amount of work-related stress plaintiff experienced than the evidence warranted. He also concluded that the medical experts opined that Mr. Reid would have to be under significant stress for it to be a cause of his stroke. We agree. Taken as a whole, the medical testimony does indicate that for stress to cause or contribute to causing a stroke, it must be higher than the level shown to have been present in this case. The record supports the trial judge’s conclusion that there is no medical link between Mr. Reid’s employment and his stroke.
Under all these circumstances, and considering all of the, medical and lay testimony, we are unable to conclude that the trial judge was manifestly erroneous in failing to find that Mr. Reid’s accident arose out of his employment. Having reached this conclusion, it is not necessary that we consider Mr. Reid’s other assignments of error. Accordingly, the district court’s judgment dismissing Mr. Reid’s demands is affirmed.
Costs of this appeal are assessed against the plaintiff-appellant.
AFFIRMED.
KNOLL, J., dissents and assigns reasons.

. Plaintiff argues that principles stated in Walton v. Normandy Village Home Association, 475 So.2d 320 (La.1985), are applicable in this case. We disagree. In Walton, the plaintiff had a pre-existing kidney disease. While on the job, he fell from a ladder, landing on the floor twenty feet below. There was no question that the accident was in the course of and arose from the plaintiff s employment. The issue before the court was whether the work-related accident accelerated or aggravated the plaintiffs kidney condition, which became disabling after the accident. The trial and appellate courts had found that the disabling condition was the result of the natural progression of his pre-exist-ing kidney disease. In deciding that there was a *648 causal connection between the plaintiffs work-related accident and his disability, the court in Walton stated:
"A claimant’s disability is presumed to have resulted from an accident, however, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves after-wards, providing either that there is sufficient medical evidence to show there to be a reasonable possibility of causal connection between the accident and the disabling condition. ... or that the nature of the accident, when combined with the other facts of the case raises a natural inference through human experience of such a causal connection.” [citations omitted].
The Walton presumption is not applicable to the facts in this case. Here, the issue is whether Mr. Reid’s stroke arose out of his employment, not whether his stroke (i.e. the accident) caused his disability. The existence of a presumption establishing a causal connection between the occurrence of an accident and the onset of disability in no way lessens the requirement of proving a causal relationship between the employment and the accident.