KNOLL, Judge,
dissenting.
The majority opinion affirms the trial court’s finding that the degree of work related stress which Mr. Reid actually experienced did not reach the level necessary to show that his stroke arose out of his employment. For the following reasons I respectfully dissent.
The record shows that Mr. Reid received his GED diploma while he was in the armed services, and served one-third of a five year sentence for commission of a burglary. At times prior to his employment with Stark’s, he worked offshore on a tug boat, and as a manager for Pitt Grill. Mr. Reid advanced with Stark’s in a relatively short period of time from assistant store manager to manager to district manager. He functioned as a troubleshooter for Stark’s, and had to stay in close contact with the five geographically diverse stores under his responsibility, as well as daily contact with his supervisor. As a result, Mr. Reid was required to drive long distances weekly to monitor and file weekly financial reports for his stores, and as an incentive to him, part of his salary was based on the volume of business produced by the stores under his supervision. To enable Mr. Reid to meet his job responsibilities he exceeded the 56 hour minimum work week Stark’s mandated, and often times worked seven days a week. At the time of his stroke Mr. Reid was in the throes of preparing the newest Stark’s in his district for its opening; preparation which on Mr. Reid’s part was initiated three days earlier on New Year’s Day. The record further reveals that during his year as district manager Mr. Reid did not take his one week vacation because of his job duties. The factual inference to the lay observer is that Mr. Reid’s work activity and its associated stress could have been a precipitating or contributing factor to the onset of his stroke. Therefore, when combined with the medical testimony, the legal inference is that there was a causal connection between the employment activity and the ac *652 cident. See Gilbert v. Bituminous Casualty Corp., 344 So.2d 86 (La.App. 2nd Cir.1977) (long driving in the course of work); Small v. J.C. Penny, Inc., 367 So.2d 1277 (La.App. 3rd Cir.1979), writ denied, 369 So.2d 156 (La.1979) (regular work duties aggravated a congenital arterial weakness); and Beaty v. Thiokol Corp., 414 So.2d 1292 (La.App. 2nd Cir.1982), writ denied, 416 So.2d 114 (La.1982) (stress from ordinary work activity can precipitate an aneurism.)
The medical evidence in the present case does not rebut the presumption of causation. Both Drs. Texada and Naalbandian, the two physicians most articulative of Stark’s position, excluded employment stress as a cause of Mr. Reid’s stroke on the basis that the most likely cause of the stroke was a blood clot. However, their opinion is not borne out by the evidence. The angiograph revealed no plaque or arterial narrowing, and there was no evidence of vascular disease in Mr. Reid’s family. Nonetheless, both these doctors did recognize a causal connexity between stress and the occurrence of a stroke, i.e., stress adversely affects hypertension and hypertension can cause a stroke.
In diminishment of the possible role of hypertension as a causative factor of Mr. Reid’s stroke, the trial court emphasized that at 10:30 a.m. on January 4, 1984, Mr. Reid’s blood pressure was normal. The isolation of this single normal reading is unduly relied upon. A quick review of the various blood pressure readings taken during Mr. Reid’s hospitalization bears out the fact that normal readings may be interspersed among higher ones (158/104; 142/82; 124/80; 130/94; 136/96; 126/84; and 140/90). Then, too, it is important to note that the medical evidence was consistent that a stroke does not normally initiate hypertension; until Mr. Reid was placed on hypertensive medication after his stroke, he had high blood pressure. Therefore it may be inferred that Mr. Reid was hypertensive prior to the stroke.
The majority also concluded that Mr. Reid’s job was not as strenuous as alleged, and that his description of his work schedule was clearly an exaggeration. Our review of the record shows Mr. Reid testified that he had a six day work week but that he often checked the Marksville store on Sundays; he further said that one of the reasons he could not take a vacation was because there was no one to replace him on the management level. From Mr. Reid’s first visit with Dr. Mayeux, shortly after his hospitalization and before this litigation was commenced, he made a point of including job stress in his medical history. Dr. Ware testified that even if only half of Mr. Reid’s history was true, Mr. Reid’s job was nonetheless stressful. The evidence preponderates that Mr. Reid was an overachiever who paid his debt to society and was trying to support his family. Though Mr. Reid did not testify that he was nervous or worried about his job or that driving made him nervous, a reasonable reading of the record infers that to Mr. Reid his job was difficult and demanding. It matters not that Mr. Reid’s other co-district managers did not find their work stressful; their education, family background and their particular work areas differentiated them from Mr. Reid.
Finally, the majority concluded that there must be a showing of extreme physical or emotional stress at the time of or very close to the time of the onset to show that the stroke is job related. In Edwards v. Exxon Co., U.S.A., 485 So.2d 228 (La.App. 3rd Cir.1986), another panel of this court stated:
“Where physical exértion, stress, or strain is alleged to have caused the vascular accident, the worker must show that the accident occurred while he was engaged in work activities which entail physical exertion, stress, or strain greater than that involved in everyday, non-employment activity. Guidry v. Sline Indus. Painters, Inc., supra. On the other hand, where there is an allegation that mental and emotional stress caused the accident, the worker must show that the vascular accident was a product of extraordi *653 nary mental and emotional stress related to his employment. McDonald v. International Payer Co., 406 So.2d 582 (La.1981). ”
In Edwards the claimant suffered a stroke after making his rounds of the gas plant; his activities included recording readings taken from instrumentation, resolution of a minor problem with a frozen valve, and the emptying of a five gallon bucket. The medical evidence excluded employment activity, either physical or associated emotional stress, as a cause for the stroke.
In the present case the elements of employment relied upon for causation consisted of physical and emotional stress and included: long work hours, the necessity of driving long distances, pressure to continually improve the volume sales of each store, troubleshooting problems at the stores, and the general stress of an overachiever trying to accomplish these tasks. In McDonald the court recognized that the absence of extraordinary mental or emotional stress associated with an unexpected and catastrophic event does not exclude compensation benefits; rather, the character of the case changes only in degree when the stimulus takes the form of sustained anxiety or pressure leading to a heart attack or a cerebral vascular accident. Stated another way, in the absence of extraordinary mental or emotional work related stress it becomes more difficult to prove the connexity required for recovery of worker’s compensation benefits, but it does not eliminate the possibility of proof of that causation. The present case is illustrative of a case which falls within this sliding scale of proof; Edwards, on the other hand, exemplifies a case which falls beyond the scope of recovery, i.e., no physical or emotional stress was shown to any degree.
Accordingly, I would find that Mr. Reid’s on-the-job stroke, when combined with all of his employment duties, raise a natural inference through human experience of job related stress, entitling Mr. Reid to total and permanent worker’s compensation benefits.