509 So.2d 995 (1987)
Tilmon W. REID
v.
GAMB, INC. d/b/a Stark's Family Restaurant.
No. 87-C-0110.
Supreme Court of Louisiana.
June 22, 1987.
Rehearing Denied September 3, 1987.
*996 Chris J. Roy, Robert Herrington, Alexandria, for applicant.
John T. Bennett, Bennett, Bennett & Bennett, Marksville, Henry B. Bruser, III, Gold, Simon, Weems, Bruser, Sharp, Sues & Rundell, Alexandria, for respondent.
DENNIS, Justice.
This is a worker's compensation case involving a claim for benefits as a result of an employee's cerebral vascular accident, or stroke, allegedly caused by his employment. The trial and intermediate appellate courts denied recovery. Reid v. Gamb, Inc., 499 So.2d 644 (La.App. 3rd Cir.1986). We affirm although we do not agree totally with the reasons assigned below.
The plaintiff employee, Tilmon W. Reid, was employed as the district manager of five Stark's Family Restaurants in Pineville, Port Allen, Bunkie, Donaldsonville and Marksville. In this capacity, which he held for about one year, he was required to visit the stores, monitor operations, interview applicants, review financial reports and perform other managerial duties. On January 3, 1984 Reid spent the day working with other employees to prepare the Donaldsonville store for its initial opening. At 6:00 p.m., after helping stock the storeroom, he picked up a snack at a convenience store and checked into a motel room which he shared with the Stark's equipment manager. Between 9:00 p.m. and 10:00 p.m. he noticed a numbness in his right arm and hand but went to sleep disregarding the symptoms. When Reid awoke the next morning, however, he could not lift his right arm and his mouth was drawn. Later that day his doctor determined that he had suffered a cerebral vascular accident and hospitalized him for three days. Afterwards he was discharged but continued to be treated by a physician. The employer paid worker's compensation but discontinued benefits on March 24, 1984. Disputes as to whether Reid was disabled and whether his stroke was employment-related led to this litigation.

1. Worker's Compensation Law
The Louisiana Worker's Compensation Act provides that if an employee receives personal injury by accident arising out of and in the course of his employment, the employer shall pay compensation. La.R.S. 23:1031.
As the court of appeal correctly observed, it is well settled that the occurrence of a cerebral vascular accident, or stroke, is a "personal injury by accident" within the ambit of La.R.S. 23:1031. Leleux v. Lumbermen's Mutual Insurance Company, 318 So.2d 15 (La.1975); Lonzo v. Town of Marksville, 430 So.2d 1088 (La.App. 3rd Cir.1983); writ denied 438 So.2d 576 (La. 1983). Reid v. Gamb, Inc., 499 So.2d at 646.
The court of appeal also concluded correctly that, because Reid was required to stay overnight in Donaldsonville away from his home in pursuit of his employer's business, namely the opening of a new restaurant the next day, and was not there pursuing his own interests, he was "in the course of his employment" under La.R.S. 23:1031 when he suffered the stroke in his motel room. An accident occurs in the course of employment when it happens during the time of employment and at a place contemplated by the employment. Michaleski v. Western Preferred Cas. Co., 472 So.2d 18 (La.1985); Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La.1982); Lisonbee v. Chicago Mill & Lbr. Co., 278 So.2d 5 (La.1973); Kern v. Southport Mill Ltd., 174 La. 432, 141 So. 19 (1932).
The function of the "arising out of" requirement of La.R.S. 23:1031 is to assure that compensation will be awarded only for personal injury causally related to the employment and fairly part of the employer's cost of business. Nix v. City of Houma, 488 So.2d 184 (La.1986); Adams v. New Orleans Public Service, Inc., 418 So.2d 485 (La.1982); Guidry v. Sline, supra; Leleux v. Lumbermen's Mutual Ins. Co., 318 So.2d 15 (La.1975); Roussel v. Colonial *997 Sugars, 318 So.2d 37 (La.1975); Prim v. City of Shreveport, 297 So.2d 421 (La.1974) and, generally, Larson, Workmen's Compensation Law (1985) Vol. IB, § 38.81 and W. Malone & H. Johnson, 13 Louisiana Civil Law TreatiseWorkers' Compensation Law and Practice § 191 (2d Ed.1980). In heart disease and related cases many courts have established special rules for proof of causation because death or injury from heart disease may ordinarily be the result of natural physiological causes rather than trauma or particular effort and because of the fear that heart cases and related types of injury and death will get out of control unless some kind of arbitrary boundaries are set up. IB A. Larson § 38.81.
This court in Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626, 633 (La.1982) drew upon the rules suggested by Professor Larson, see IB A. Larson, Workmen's Compensation Law § 38.83 (1980), to formulate precepts to govern proof that a worker's heart accident arises out of the employment: (1) If the employee has a previously weakened or diseased heart the employment exertion, stress or strain, acting on the preexisting condition, must be a degree greater than that generated in everyday non-employment life and must be a cause in fact of the employee's personal injury or death; (2) if there is no prior weakness or disease, the employment exertion, stress or strain must be simply a cause in fact of the worker's personal injury or death; (3) to be a cause in fact in either situation the employment exertion, stress or strain must precipitate, accelerate, aggravate, or otherwise cause or contribute to the worker's personal injury or death. IB Larson § 38.83(h); see also Leleux, supra; and Roussel, supra.
In Guidry this court made clear that there is no presumption that a vascular accident occurring on the job is caused by the employment. The plaintiff must prove the causal link between the employment and the accident by a preponderance of the evidence. Guidry v. Sline, supra; see Prim v. City of Shreveport, 297 So.2d 421 (La.1974).
These precepts are compatible with many preexisting jurisprudential rules. Accordingly, it is not necessary for the claimant to prove that the work was the sole cause of the heart injury, so long as it is shown to be a contributing, accelerating or aggravating factor. Guidry v. Sline, supra; Parks v. Insurance Company of North America, 340 So.2d 276 (La.1976); and Roussel, supra. The presence of a history of arteriosclerosis or even the fact a heart attack was "inevitable", does not necessarily rule out an award. Guidry v. Sline, supra; Guillory v. United States Fidelity & Guaranty, 420 So.2d 119 (La.1982); Guidry v. Serigny, 378 So.2d 938 (La.1979); Cadiere v. West Gibson Products Co., 364 So.2d 998 (La.1978); and Roussel, supra. Lay testimony may be relied on to support a causal connection, even when there is positive medical testimony to the contrary. In view of medical experts' understandable tendency to assess causation of disease in the context of the patient's whole history, rather than as it relates specifically to employment, their testimony as to job-injury relationships should be evaluated carefully: for example, cautious medical testimony couched in terms of "might have" and "possibly" may be used in conjunction with lay testimony to find a probability, and positive conclusory statements about causation by doctors should not be uncritically adopted. Beaty v. Thiokol, 414 So.2d 1292 (La.App.2d Cir.1982); see, Walton v. Normandy Village Homes Assoc., Inc., 475 So.2d 320 (La.1985); Lucas v. Insurance Co. of N. America, 342 So.2d 591 (La.1977); Malone & Johnson, supra, § 256; and see, generally, Kostamo v. Marquette Iron Mining Co., 274 N.W.2d 411 (Mich.1979).
This case raises the question of whether the Guidry formula for proof of a causal link between job and accident, which was adopted in a heart attack case involving physical stress, should also apply in a cerebral vascular accident case, and, if so, whether the formula applies even when the employment contribution to the accident consists solely of mental or emotional stress. In Guidry this court was not required to answer these questions and specifically *998 noted that a different standard for mental and emotional stress cases had been enunciated in McDonald v. International Paper Co., 406 So.2d 582 (La.1981). Guidry v. Sline Indus. Painters, Inc., 418 So.2d at p. 631, n. 11, p. 633, n. 17. No reason may be surmised from the court's opinion for reserving judgment on these questions, however, other than traditional judicial reluctance to decide an issue not presented.
Confronting the questions squarely in the present case, we conclude that the formula adopted by this court in Guidry for heart cases should also be applied in cerebral vascular accident cases. It is well settled that a worker may recover compensation for a stroke if his employment contributed to the accident and that he carries the burden of proving this causal link by a preponderance of the evidence. Leleux v. Lumbermen's Mutual Ins. Co., supra; Lonzo v. Town of Marksville, supra. As this court observed with respect to heart attacks, if the physical exertion, stress or strain on the job, and preceding the infarction, is no more than the worker would likely have experienced in a non-work situation, the attack may be a result of the natural progression of a preexisting disease rather than the result of the employment activity. Guidry v. Sline, supra; see IB A. Larson, Workmen's Compensation Law § 38.83, (1980); and Malone & Johnson, supra, § 261 (1987 Supp.). In order to avoid unfairly charging the employer with the cost of strokes not causally related in some way with the employment, if the employee has a preexisting weakness or condition that predisposes him to a cerebral vascular accident, the claimant should be required to prove that the employment acting on the preexisting condition was a degree greater than that generated in everyday non-employment life. Malone & Johnson, supra, § 261 (1987 Supp.).
Further, there is no good reason to distinguish between worker's compensation cases on the basis of whether deleterious employment stress is mental, emotional or physical or on the basis of whether the gravity of the stress is extraordinary. First, the classification of employment stress as "physical, mental or emotional" is not fair or workable in practice. Use of such words as mental, emotional, nervous and the like is only a rough expedient adopted to sort out crudely an almost infinite variety of subtle, overlapping conditions and relationships. See IB A. Larson, Workmen's Compensation Law § 42.20. To base a heavy burden of proof on such artificial and tenuous classifications may deny the protection of equal laws to many workers suffering genuine employment related injuries. Cf. La. Const. Art. I § 3 and Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094 (La.1985). Second, the "extraordinary" distinction is equally unfair and impracticable. It assumes that there is a quantum of stress, exertion or exposure in any occupation which is usual or normal an assumption that is questionable at best and difficult to apply evenhandedly. A worker's task, burden, or working condition may vary widely with the hour, day, weather, season or exigency of employment; yet none of the variables may be unexpected or extraordinary. IB A. Larson, Workmen's Compensation Law § 38.63. It is almost certain that trial judges will unintentionally reach materially inconsistent results in classifying stress as ordinary or extraordinary under such a scheme, thus exacerbating the unequal treatment of injured workers under law due to the mental, emotional or physical classifications. Accordingly, for the foregoing reasons we conclude that the classification of cases on the basis of whether employment stress is physical or extraordinary should be abandoned and that the Guidry formula should be applied in cerebral vascular accident cases without respect to these distinctions.

2. Application of Precepts
In its written reasons for judgment the trial court found that the plaintiff suffered a cerebral vascular accident but that the plaintiff had failed to discharge his burden of proving that his employment caused or contributed to his stroke and disability. From our examination of the whole record we conclude that there was *999 evidence before the trial court which, upon its reasonable evaluation of credibility, furnished a reasonable factual basis for the trial court's findings, which were not clearly wrong. Accordingly, the court of appeal did not err in refusing to disturb the trial court findings.
The trial court rejected the plaintiff's contention that job stress contributed to his stroke principally for two reasons. First, the court found that the evidence fully supported the opinions of Doctors Naalbandian, Fresh and Texada that Reid's employment was not unusually stressful and was not a probable factor contributing to his stroke. Second, the court determined that the testimony of the defendant's experts was more accurate and reasonable than that of Dr. Ware, the plaintiff's expert, because the latter's testimony was based on an inaccurate work history provided by the plaintiff and was lacking in factual basis in other respects as well.
The trial court found that the trial testimony of Reid and his wife did not describe a very stressful work environment. Reid did not testify that he felt dissatisfied, overworked, fearful of losing his job or inadequate to perform his tasks. He did not report any conflict or dissatisfaction with his superiors, subordinates or fellow district managers. On the contrary, he claimed that he liked his work and his cohorts.
The record reflects that the plaintiff's duties consisted primarily of typical midmanagement functions. Reid testified that he was expected to visit each store under his supervision at least once a week. Usually, when he visited a store he communicated with the store manager and observed the operations. He was required to verify various in-house reports prepared by the store manager. Occasionally, he assisted in cooking, waiting tables, unloading supplies and taking inventory. He apparently received instructions and advice by telephone from a company executive on a daily basis. He did not have the full responsibility for hiring and firing store managers but did so under the supervision and guidance of his executive supervisor. The hiring and firing of store employees was exclusively the responsibility of each store manager. Although Reid received about one-half of his $25,000 annual income from a percentage of store earnings, he was not under pressure to increase profits by a certain amount per year. He testified that his own goal was to do a little better each year.
Furthermore, the trial court concluded that the stressful employment depicted by Reid in the job history given Dr. Ware was belied by the trial testimony. The doctor testified that the plaintiff and his wife informed him that plaintiff had had no vacation during the three years he had worked for defendant and during the last year he had taken only two days off, Thanksgiving and Christmas; and that the plaintiff worked ten to twelve hours per day, seven days per week. However, the trial court found from the evidence that the plaintiff understated his days off, that he averaged six work days per week rather than seven; that he was entitled to vacation but elected to waive it during the year he served as district manager, and that he enlarged clearly beyond the truth the number of miles he traveled in his work.
At the time of his stroke the plaintiff was 44 years old and had apparently been in good health. He had been married eleven years and had supported his wife and six children. Before being employed by Stark's as a district manager he worked as a deckhand, wheelman, boat captain, Pitt Grill manager, industrial painter, and Stark's store manager. His parents died of diabetes in their fifties but he had never been diagnosed as a diabetic. He smoked about one pack of cigarettes per day.
The record indicates that while some neurological deficits remain, Reid's stroke was not one of greatest severity. Dr. Paul Ware, a neuropsychaitrist and plaintiff's expert witness performed a battery of physical and mental tests on Reid. He concluded that Reid had some slight loss of dexterity, sensation, and strength in his right arm. Reid also had a decreased right arm swing and difficulty in balancing. However, Ware felt that the mental effects *1000 of the stroke were much more disabling. Reid had trouble selecting the right word to use, and difficulty with concentration and recent memory recall. In Ware's opinion, Reid did not have the memory and thinking function to return to work. Defendants' expert, Dr. Davidson Texada, also a neuropsychiatrist, essentially confirmed Ware's findings on disability. Texada found that Reid had some "clumsiness" of the right hand. His speech was slow and occasionally slurred. He had difficulty choosing the right word and his thinking was somewhat slowed. Dr. George Hearn, an industrial psychologist called by plaintiff testified that Reid was disabled from returning to his old job because of his problem with alertness and speed of response. Hearn also felt that the weakness in Reid's right arm would prevent him from doing any type of manual labor.
A cerebral vascular accident (stroke) is due to some interference with the blood supply to the brain. This may occur as a result of cerebral hemorrhage, a massive bleeding into the substance of the brain, or from anything that impairs the supply of blood through the cerebral arteries, the vessels delivering blood to the brain. 5A Lawyer's Medical Cyclopedia § 34.27a(E) p. 221 (3rd Ed.1986).
As a general rule, hemorrhages into the substance of the brain are the most serious of strokes, having a very high mortality rate and a high degree of residual disability among the survivors. These often result from extreme hypertension which causes the rupture of a vessel. In addition to interrupting the blood supply of the affected vessel, hemorrhages are usually associated with a large mass of blood in the brain tissue. Id. at p. 222. In the present case, the medical experts agreed that Reid's stroke was not caused by hemorrhage because a CAT scan performed shortly after his accident failed to show blood in the brain substance.
The greater number of strokes are ischemic in nature, i.e., due to a lack of blood rather than a hemorrhage. While very serious, ischemic strokes are not associated with the enormous mortality rates seen with hemorrhage. In an ischemic stroke the supply of blood to the brain is impaired resulting in the death of some brain tissue, which heals with a scar. While the patient usually survives the attack, a residual neurological deficit is the rule. Id. at p. 223. In the present case, the medical experts agreed that Reid probably had suffered an ischemic stroke, but there was a diversity of opinion as whether the specific mechanism of the accident was an embolism (blood clot or abnormal particle), or a vasospasm (spasm of a blood vessel).
Dr. Babson Fresh, Alexandria neurosurgeon, testified that the plaintiff was referred to him for examination and treatment by his cardiovascular surgeon on January 4, 1984. In his opinion, Reid had suffered a left posterior frontal ischemic infarct, or a stroke involving the brain on the left side that controls motor function, in his case specifically the arm and face. He testified that the most common causes of ischemic stroke are arteriosclerosis, inflammation of blood vessels associated with diseases, and spasms of blood vessels in response to extreme elevation of blood pressure. The doctor said he did not have sufficient information to say whether it was more likely that the blockage of blood supply had been caused by spasm rather than one of the other common causes. If the stroke had been caused by a blood clot resulting from disease, rather than from spasm, the doctor said, physical, mental or emotional stress would not have been a factor. To have a vasospastic stroke in which stress can be a factor, a patient generally must have severe diastolic hypertension of 130 to 140. Reid's first recorded diastolic reading in the emergency room was 104. Therefore, the doctor indicated he could not definitely relate the stroke to spasm because he could not determine how high the pressure had been before or during the stroke. However, Dr. Fresh testified that vasospastic stroke victims typically are persons who push themselves to the limit of physical and mental endurance. Based on a description of Reid's activities on the day of his accident, and the assumption that he was not excessively stressed generally, the doctor was of the opinion *1001 that stress probably was not a factor contributing to the stroke.
On cross examination, however, Dr. Fresh testified that an angiogram performed on the plaintiff was normal indicating an absence of arteriosclerosis or other underlying disease and concluded that his stroke had not been embolic, i.e., caused by blood clot or abnormal particle. Therefore, the doctor testified the plaintiff's stroke had most likely been caused by a blood vessel spasm. Nevertheless, the doctor was of the opinion that in order for the stroke to have been causally related to the employment pressures the stress would have had to have been significant, in the extreme both mental and physical, so as to elevate his blood pressure to an extreme degree.
Dr. Arsham Naalbandian, Alexandria neurosurgeon, testified that he saw the plaintiff on April 18, 1985 when he was referred for an evaluation by his family practice physician. The doctor diagnosed Reid's condition as the result of left hemisphere ischemic cerebral vascular accident or stroke which caused right sided weakness. In his opinion the stroke probably resulted from a deprivation of blood supply to the brain due to either a blood clot or a thickened and hardened artery. When the doctor was given a description the plaintiff's employment activities he expressed his opinion that the work was not unusual and that it would be difficult to link it causally with the stroke. Although he thought it theoretically possible for an accumulation of stress to cause hypertension which could lead to a stroke, he testified that it is not a common thing for stress directly to cause a vasospasm stroke without intervening hypertension or other underlying pathology.
Dr. Paul D. Ware, Shreveport neuropsychiatrist, saw the plaintiff for evaluation and consultation on April 29, 1985 by referral from the plaintiff's attorney. He had reviewed the other doctors' evaluations and tests and agreed with the diagnosis of left posterior frontal ischemic infarct. According to the doctor, Reid gave him a work history of driving 6,000 miles per month, or 200 miles per day, and working without vacation for 10 to 12 hours per day for seven days per week. Based on this work history, the absence of a family history of stroke or essential hypertension, and the absence of pathology indicated by CAT scan and angiogram, Dr. Ware was of the opinion that the employment stress probably had been a factor in causing a blood vessel spasm that led to the stroke. He conceded, however, the possibility that a stroke of the type Reid experienced could occur without any measurable stress.
Dr. Davidson H. Texada, Jr., Alexandria neuropsychiatrist, saw the plaintiff on July 22, 1985 for an evaluation at the request of defendant's attorney. The doctor also reviewed the previous medical evaluations by other medical experts, medical tests and hospital records. In his opinion Reid's stroke most likely resulted from an embolus or blood clot. He held this view although the CAT scan and angiogram performed on the plaintiff were negative for occlusions in the major vessels of the brain. The doctor felt that these type of tests were not as reliable in detecting occlusions in the very small branches of the arteries. Dr. Texada was of the opinion that there had been no causal relationship between the employment and the stroke. He testified that physical, mental or emotional stress could lead to hemorrhagic stroke or lead to or abet a hypertensive type illness but that the type of stroke Reid had is almost invariably due to a circulatory problem or a disease of the artery itself which is going to occur no matter what the person is doing. In Dr. Texada's opinion, the job had not been overly stressful for Reid because the plaintiff said he thoroughly enjoyed his work. The doctor said a person who is over-stressed for his physiologic or psychological nature to his detriment doesn't enjoy his work. Although it was possible that the job described by Reid could have produced hypertension, the medical evidence available was more compatible with an occlusion of a blood vessel by an embolus than with other causes, according to the doctor.
After reviewing the evidence, we find that the trial court's evaluation of the medical *1002 testimony with respect to causality and the lay testimony regarding the degree of job related stress was not unreasonable. Accordingly, we cannot say that the trial court erred manifestly or was clearly wrong in finding that the employment in this case did not contribute to the stroke which the plaintiff suffered.

3. Plaintiff's Arguments
Plaintiff argues that the trial court erred in finding that Reid had a preexisting susceptibility to stroke and that the court of appeal erred in applying the preexisting heart disease jurisprudence in this case. Assuming the plaintiff is correct, however, these errors did not prevent the court from reaching the correct result. The basis of the decisions below was that the plaintiff failed to prove that the employment stress in any way contributed to his cerebral vascular stroke. This finding, which was supported by the evidence, prevents recovery of compensation under the correct legal precepts even when there is no preexisting disease or weakness. Thus, the lower courts' actual decision making process did not reach the issue upon which a preexisting disease or weakness would have been relevant.
Plaintiff complains that the trial court ignored Dr. Ware's testimony regarding stress. However, the record reflects that the court considered the testimony, weighed it against the testimony of other experts and found their evidence more persuasive. The trial court did not disregard Dr. Ware's testimony because he had not conducted or published research or statistical studies. The court merely refused to give him elevated status over the other expert practitioners.
The trial court's statement that there must be a showing of extreme physical or emotional stress at the time of or close to the time of onset of the stroke was incorrect, as the plaintiff points out. However, this erroneous statement of law did not detract from the trial court's reasonable factual finding based on three medical experts' testimony and the other evidence that the employment stress in this case did not contribute to the stroke. As we observed earlier, this factual finding prevents recovery of compensation under correctly stated rules of law.

Conclusion
For the reasons assigned, the judgment of the court of appeal is affirmed.
AFFIRMED.
DIXON, C.J., and WATSON, J., dissent.