YELVERTON, Judge.
This is an appeal by the employer, Dresser Industrial Valve of Dresser Industries, Inc., from a judgment awarding workers’ compensation benefits, statutory penalties, and attorney’s fees to Walter J. Gaspard, for an injury on the job on September 25, 1986. During the pendency of this appeal Gaspard died, and Jamie LaPrairie Gas-pard, his widow, was substituted as the party plaintiff.
Gaspard had been employed by Dresser since 1968, working in a boiler room running a steam generator air compressor and maintaining equipment. The accident happened before 9:00 a.m. on Thursday, September 25, 1986, on the first shift which worked from 4:30 a.m. to 3:00 p.m. Gas-pard was working that shift. A bolt came loose on a water pump. Using a box wrench, he stooped down to tighten the bolt. The wrench slipped and he fell in a sitting position on the concrete floor. Immediately he experienced pain all over his chest, and after going to first aid he went to see his family physician. His physician, Dr. P.K. Kaimal of Alexandria, would not let him go back to work.
Plaintiff’s medical history shows that he had a bad case of arteriosclerosis. He had a heart attack in 1976. In 1978 he underwent bypass surgery. He returned to work on January 18, 1979, to the same job at Dresser. Occasionally thereafter he would have chest pains for which he took nitroglycerin, which always brought relief. On the day of this attack, according to plaintiff, it did not bring total relief because his chest was hurting too much. He testified, and his wife testified, that although he had had angina pain both on and off work before September 25, 1986, the pain on that occasion was greater, and after that date, the angina pains became more frequent.
The only significant medical evidence in the record is the deposition of Dr. Kaimal. A board certified cardiologist, Dr. Kaimal became Gaspard’s doctor in March 1986, by coincidence about six months before he became disabled. The history that Dr. Kaimal recorded on that first visit was that Gaspard had had bypass surgery in 1978, that he had done reasonably well until 1984 when chest pains began, and that he had hypertension. On March 25, 1986, Dr. Kaimal had Gaspard undergo a coronary angiogram, as to the results of which Dr. Kaimal testified:
“... what he had was his grafts [from the 1978 bypasses] were open, but he had progression of disease in his own arteries and had basically nonbypassable disease at this point and therefore I found the reason why he’s having angina pectoris and decided to treat him medically.”
After the March 1986 findings Dr. Kaimal allowed Gaspard to continue working, but instructed him not to lift anything heavy, meaning anything over thirty to forty *179 pounds, and set him up for examinations at intervals of three months thereafter.
Gaspard went in to Dr. Kaimal on the first scheduled three month examination on July 10, 1986, and Dr. Kaimal found that he was all right. The next time he saw Dr. Kaimal was on the day of the accident, September 25,1986, which was not a scheduled visitation. On that day, according to Dr. Kaimal's deposition testimony, plaintiff was either tightening or opening a valve when he felt a pain which felt severe right across his chest and Gaspard was worried whether it had caused any damage to his heart. On this examination Dr. Kaimal noticed an unstable sternum which he had not seen before. He explained that heavy exertion will sometimes cause separation of the healed sternum after a coronary bypass. He told Gaspard not to do the kind of work again that he had been doing that morning, and sent him home to rest for two months.
On October 28, 1986, Gaspard came back complaining of more chest pain right across the chest happening more often, as well as a sharp pain where the sternal instability was noticed. The doctor felt there was progression of the angina and the separated sternum was not getting any better. The doctor stated in his deposition that on the occasion of this visit: “... after discussing the type of work and the fact that he did something which might have caused the separation of the sternum, I advised him that he retire from his job.” He declared that from then on plaintiff was unquestionably unable to work.
Insofar as his heart was concerned, Dr. Kaimal did not indicate that he thought plaintiff had had a heart attack that morning, and he testified that Gaspard’s heart was no worse as a result of the angina pain than it was before the incident. Two other doctors testified in the case but their contribution to the issue before us is not of much help. Dr. Lester Ducote, a cardiologist, examined plaintiff once on July 28, 1987, and took a history. He recognized that plaintiff was totally and permanently disabled, but he did not believe that the accident made Gaspard’s heart disease worse, although he admitted the accident could have aggravated the usual chest discomfort he had after surgery. This doctor was not asked about nor did he mention the possible separated sternum suspected by Dr. Kaimal. The other doctor who testified in the case, Dr. Fernando Garcia, examined plaintiff once and said that he would defer to the opinion of Dr. Kaimal, the treating physician.
The trial court relied upon the testimony of Dr. Kaimal, as well as the “before and after” testimony of Gaspard and his wife, and found that the plaintiff had carried the burden of proving a connection between the accident and the work activity. From our examination of the whole record we conclude that there was evidence before the trial court which, upon its reasonable evaluation of credibility, furnished a reasonable factual basis for the trial court’s findings, which were not clearly wrong.
On this appeal the defendant argues that Gaspard failed to prove that his disability was caused in any degree by the incident at work, but rather, defendant argues that the evidence shows conclusively that his disability was simply the result of the natural progression of his very bad heart condition.
To make out a successful claim, plaintiff had the burden of proving personal injury by accident arising out of and in the course of his employment. La.R.S. 23:1031. The plaintiff proved that on September 25, 1986, he was at work, he was exerting himself, he was trying to tighten a bolt with a wrench, the wrench slipped, and he fell on the floor in a sitting position, whereupon the pain across his chest immediately took place. Dr. Kaimal found evidence of a sternum separation which he had not seen before. He said that such conditions sometimes develop from strenuous effort. The trial court’s finding as to this fact is clearly supported by the evidence. Gaspard suffered an accident in the course of his employment. Reid v. Gamb, Inc., 509 So.2d 995 (La.1987). The evidence is equally clear that the accident arose out of his employment. In this case we need not address the question of whether the *180 heart pain, or angina pectoris, in this instance would alone provide proof by a preponderance “that the employment acting on the pre-existing condition was a degree greater than that generated in everyday non-employment life”, Reid v. Gamb, Inc., supra at 998, for plaintiff suffered a ster-nal injury which contributed to his disability. Here, the sternum was separated, and the fact that it was not getting better was an additional factor causing Dr. Kaimal to direct Gaspard not to work anymore. This is sufficient to make out a prima facie case showing that the accident arose out of or was connected with, the employment. Guidry v. Sline Industrial Painters, Inc. 418 So.2d 626 (La.1982). The trial court was correct in awarding benefits for total and permanent disability.
We now consider the appropriateness of the award of attorney fees and penalties made by the trial court. In doing so, we bear in mind that the trial court’s determination that an award of penalties and attorney’s fees is warranted is based on a finding of fact and that his decision should not be disturbed unless it is clearly wrong. Williams v. Union Tank Car Co., 524 So.2d 858 (La.App. 3rd Cir.1988).
The standards for these two awards differ. The statutes provide that to avoid an award of penalties, the employer must demonstrate that non-payment resulted from conditions over which it or the insurer had no control, or that it or the insurer has reasonably controverted the right to benefits. La.R.S. 23:1201(E). Before an employer or insurer can be found liable for attorney’s fees, his failure to pay must be found to be arbitrary, capricious, or without probable cause. La.R.S. 23:1201.2.
La.R.S. 23:1201(B) provides that:
B. The first installment of compensation payable for temporary total disability, permanent total disability, or death shall become due on the fourteenth day after the employer or insurer has knowledge of the injury or death, on which date all such compensation then due shall be paid.
Dresser has not proved that the nonpayment of benefits within fourteen days from knowledge was due to conditions over which it had no control. Nor has it reasonably controverted the claim asserted by Gaspard. Gaspard suffered his injury on September 25, 1986. He immediately informed his foreman of the accident. On October 1, 1986, Gaspard’s attorney notified Dresser that Gaspard had sustained an injury on the job. On November 12, 1986, Dresser informed Gaspard that his claim was being investigated. The record does not show what that investigation revealed. However, Dresser was aware of Dr. Kaimal’s opinion by July 30, 1987, at the latest, because that was when his deposition was taken. In that deposition Dr. Kaimal made it clear that the incident of September 25, 1986, resulted in a probable sternal separation that was one of the reasons why he immediately instructed his patient to stop working, and that the sternal separation did not thereafter improve. There was no contrary medical testimony. Thereafter, Dresser failed to make compensation payments. Up until July 30, 1987, so far as the record is concerned, Dresser was aware of Gaspard’s deteriorating heart condition but nothing else. Dresser during that period of time was reasonable in controverting Gaspard’s entitlement to benefits, and its conduct could hardly have been described as arbitrary and capricious. We can accept, as we must in the absence of clear error, the trial court’s determination that after July 30, 1987, when Dresser became aware of the additional factor of the ster-nal separation on the disability question, that its resistance to payment of benefits became unreasonable. On the basis of these facts the trial court found that Dresser owed penalties. We agree.
Although we affirm the award of penalties, we cannot affirm the award of attorney’s fees. Under R.S. 23:1201.2 the time period of payment of any claim due is established at 60 days after receipt of notice. Dr. Kaimal’s deposition was taken July 30, 1987. For all the record reveals, this is the first time that Dresser had notice that the sternal separation was a factor in plaintiff’s disability. The case was tried on August 19, 1987, just three weeks later. The 60 day time period is a statutory requirement in addition to the requirement that the failure to pay be arbitrary, capri *181 cious and without probable cause, before attorney’s fees may be imposed. The 60 days did not elapse. Under the circumstances of this case, attorney’s fees cannot legally be imposed.
The last complaint of error raised by appellant is the denial of its motion for a new trial. Dresser argues that it was not put on notice by the petition or during the trial that the sternum problem would be advanced as a disabling condition. We disagree. The petition is broadly worded as to description of injury. Dr. Kaimal’s deposition was taken for trial purposes three weeks before the trial date, and he clearly explained the likelihood of a sternum problem as a contributing factor to plaintiff’s disability. The trial judge in his written reasons for judgment specifically referred to that injury in his causation findings of fact. Appellant is not entitled to a new trial. However, we have already recognized, in Dresser’s favor in this regard, that the evidence fails to reveal proper notice of injury before July 30, 1987, and for that reason we have eliminated the award of attorney’s fees, and to this extent we grant relief to the appellant.
For the foregoing reasons, the judgment of the trial court is reversed insofar as it awards attorney’s fees to the plaintiff. In all other respects, the judgment is affirmed. Costs of appeal will be shared equally by the parties.
AFFIRMED IN PART; REVERSED IN PART.