568 So.2d 1157 (1990)
Cheryl R. RUF, Individually and on Behalf of her Minor children, Sharon A. Ruf and Stephen C. Ruf
v.
DARRELL DeMOSS PHOTOGRAPHERS and State Farm Fire and Casualty Company.
No. 90-CA-211.
Court of Appeal of Louisiana, Fifth Circuit.
October 11, 1990.
Writ Denied December 14, 1990.
*1158 Joseph F. LaHatte, Jr., Cecelia F. Abadie, New Orleans, for plaintiff-appellant.
Teresa C. Leyva, Denis Paul Juge, Sutherland, Juge, Horack & Dwyer, New Orleans, for defendants-appellees.
Before CHEHARDY, GAUDIN and GRISBAUM, JJ.
GRISBAUM, Judge.
This is a worker's compensation matter in which the plaintiff (decedent's wife) is appealing the trial court's award of benefits, and the defendant (employer) is appealing the trial court's finding that the decedent's heart attack occurred while in the course and scope of his employment and was "causally" connected. Additionally, the defendant is appealing the award of penalties and attorney's fees. We amend in part, and as amended, affirm.

ISSUES
We are called upon to determine the following issues:
(1) Whether the trial court erred in finding that the decedent was an employee of the defendant;
(2) Whether the trial court erred in finding a causal connection between the decedent's employment and his heart attack;
(3) Whether the trial court erred in calculating benefits owed to the plaintiff; and
(4) Whether the trial court erred in awarding penalties and attorney's fees.

FACTS
Mr. Clement Ruf was employed by Darrell DeMoss Photographers until January 1986, at which time he was laid off. On April 30, 1986, Mr. Ruf assisted Mr. DeMoss with a photo shoot at Mount Carmel Academy. While at the school, Mr. Ruf suffered a fatal heart attack. Mrs. Ruf filed a claim for worker's compensation benefits on behalf of herself and her two children. The Louisiana State Office of Worker's Compensation issued a recommendation, which was rejected by Mrs. Ruf. The case then proceeded to trial where the trial court ruled that Mr. Ruf was an employee of the defendant on the date of his fatal heart attack, that the heart attack arose out of said employment, that plaintiff was entitled to benefits based on a weekly wage of $100, and, finally, that attorney's fees and penalties were owed plaintiff for arbitrary and capricious failure to pay benefits.

ANALYSISISSUE ONE
Louisiana jurisprudence has consistently held that it is incumbent upon a claimant to prove the existence of an employee-employer relationship by a preponderance of the evidence. Renfroe v. City of New Orleans, 394 So.2d 787 (La.App. 4th Cir.1981).
The record reflects that Sister Camille Ann Campbell, principal of Mount Carmel Academy, testified that she negotiated exclusively with Mr. Ruf and that Darrell DeMoss Photographers was given the job on the condition that Mr. Ruf handle the picture. Sometime after January, Sister Campbell spoke with Mrs. DeMoss and reiterated her point that the job was contingent upon Mr. Ruf's taking the picture. At that time, she was assured that Mr. Ruf would be available and the appropriate arrangements were made. Since credibility assessments are within the sound discretion of the trier of fact, the appellate court may not disturb these factual findings on appeal absent a showing of manifest error. Jackson v. Hurst, 480 So.2d 487 (La.App. 5th Cir.1985). Therefore, after a careful review of the trial *1159 court's factual findings, we cannot say it was manifestly erroneous to conclude that an oral contract existed on April 30, 1986 between Mr. Ruf and Mr. DeMoss.

ISSUE TWO
The Louisiana Supreme Court states that "`Causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the court, based on all credible evidence.'" Guillory v. U.S. Fidelity & Guar. Ins. Co., 420 So.2d 119, 124 (La.1982) (quoting Haughton v. Fireman's Fund Am. Ins. Co., 355 So.2d 927, 928 (La.1978). Of recent vintage, the Louisiana Supreme Court, in Reid v. Gamb, Inc., 509 So.2d 995 (La.1987), clarified the question of causation relating to a worker's heart accident by stating:
This court in Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626, 633 (La.1982) drew upon the rules suggested by Professor Larson, see 1B A. Larson, Workmen's Compensation Law § 38.83 (1980), to formulate precepts to govern proof that a worker's heart accident arises out of the employment: (1) If the employee has a previously weakened or diseased heart the employment exertion, stress or strain, acting on the preexisting condition, must be a degree greater than that generated in everyday non-employment life and must be a cause in fact of the employee's personal injury or death; (2) if there is no prior weakness or disease, the employment exertion, stress or strain must be simply a cause in fact of the worker's personal injury or death; (3) to be a cause in fact in either situation the employment exertion, stress or strain must precipitate, accelerate, aggravate, or otherwise cause or contribute to the worker's personal injury or death. 1B Larson § 38.83(h); see also Leleux [v. Lumbermen's Mut. Ins. Co., 318 So.2d 15 (La.1975)] ... and Roussel [v. Colonial Sugars, 318 So.2d 37 (La.1975) ]....
Id. at 997.
We conclude that, since lay testimony may be used to contradict expert medical testimony to prove the existence of a causal relationship, likewise, logic dictates that lay testimony may be used to prove a causal connection when no medical evidence, other than cause of death, is presented.
The record shows that Mr. Ruf, wearing a suit, arrived at Mount Carmel Academy at approximately 10 a.m. The temperature was 90-95 degrees and he was forced to park several blocks away. In order to set up the picture, Mr. Ruf carried approximately 20 chairs and pillows out to the driveway of the school. Once the props were in place, he began positioning some 200 students. This involved making several trips up and down the stairs to the balcony in order to have a better overall view of the class. The picture was completed shortly after noon, at which time Mr. Ruf entered the building and collapsed. He died en route to the hospital. An autopsy revealed preexisting heart disease and the cause of death as acute anterolateral myocardial infarction. From these record facts, we cannot say the trial court erred in its finding that the plaintiff met her burden of proof that the work effort, stress, and strain of the job, in all reasonable probability, contributed in some measure to the decedent's heart attack.
ISSUE THREE
La.R.S. 23:1021(10)(d) provides:
(10) "Wages" means average weekly wage at the time of the accident. The average weekly wage shall be determined as follows:
. . . .
(d) Other wages. If the employee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six week period and multiplied by four; however, if such an employee has worked for the employer for less than a twenty-six week period immediately preceding the accident, his gross earnings from the employer for the period immediately preceding the accident divided by the number of *1160 days the employee actually worked for the employer during said period and multiplied by four.
The defendant and the decedent entered into a new contract of employment prior to April 30, 1986. This contract was entirely different from the previous employment contract in that it provided for a different job description, job status, benefits, and wages. Therefore, in accordance with the explicit provisions of the statute, Mr. Ruf's wages as a full-time employee differed considerably from his wages "at the time of the accident" and, hence, should not be considered when calculating benefits.
However, plaintiff is correct in that the trial court erred in its calculation. The statute specifically states that the average weekly wage equals gross wages to date ($100) divided by the number of days worked (1) multiplied by four. Therefore, the judgment of the trial court should be amended to reflect an average weekly wage of $400.

ISSUE FOUR
La.R.S. 23:1201(E), in part, provides:
If any installment of compensation payable without an order is not paid within the time period provided in Subsections B, C, or D of this Section, there shall be added to such unpaid installment a penalty of an amount equal to twelve percent thereof, which shall be paid at the same time as, and in addition to, such installment of compensation, unless such nonpayment results from conditions over which the employer or insurer had no control. Whenever the employee's right to such benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply....
La.R.S. 23:1201.2, in part, provides:
Any insurer liable for claims arising under this Chapter ... shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim....
We first note that, absent manifest error, the trial court's decision to award penalties and attorney's fees will not be disturbed. Chelette v. Am. Guar. and Liab. Ins., 480 So.2d 363 (La.App. 3d Cir.1985).
In the past, courts have refused to award penalties and attorney's fees when there has been a bona fide factual dispute. However, that is not the case here. We find that Mr. DeMoss, as the only living party to the oral contract of employment and as an eyewitness to the conditions of Mr. Ruf's work environment on the day he died, was fully aware of all factors and information necessary to determine plaintiff's entitlement to benefits.
For the reasons assigned, the judgment of the trial court dated November 28, 1989 is to be amended in the following respects: (1) Mr. Ruf's average weekly wage is to be calculated at the rate of $400 per week, and (2) the dependents' benefits are to be paid as follows: 65 percent of $400 from May 1, 1986 to October 1, 1986, during which time there were three dependents, and then 46½ percent of $400 from October 1, 1986 to December 1, 1989, during which time there were two dependents. Further, defendants are liable for future weekly payments in the amount of $185 representing 46¼ percent of $400 for the remaining two dependents. In all other respects, the judgment of the trial court dated November 28, 1989 is hereby affirmed. All costs of this appeal are to be assessed against the appellant.
AMENDED IN PART, AND AS AMENDED, AFFIRMED.