DENNIS, Justice,
dissenting.
Because I believe the trial court was not manifestly erroneous in finding for the plaintiff, and thus necessarily that deceased’s on-the-job injury to his leg contributed to his death, I respectfully dissent.
Plaintiff need not prove that Mr. Quinones’ leg injury was the sole cause of his death, but rather, only that it was a contributing, accelerating or aggravating factor. Reid v. Gamb, Inc., 509 So.2d 995, 997 (La.1987); Guidry v. Sline, Indus. Painters, Inc., 418 So.2d 626 (La.1982); Parks v. Insurance Co. of North America, 340 So.2d 276 (La.1976); Roussel v. Colonial Sugars Co., 318 So.2d 37 (La.1975). The fact that the subsequent disability or death may be “inevitable” does not rule out an award. Reid, supra; Guidry, supra, Guillory v. United State Fidelity & Guar. Ins. Go., 420 So.2d 119 (La.1982); Gui-dry v. Serigny, 378 So.2d 938 (La.1979); Ca-diere v. West Gibson Products Co., Inc., 364 So.2d 998 (La.1978); Roussel, supra. This Court has previously explained how the plaintiff might make this showing:
Lay testimony may be relied on to support a causal connection, even when there is positive medical testimony to the contrary. In view of medical experts’ understandable tendency to assess causation of disease in the content of the patient’s whole history, rather than as it relates specifically to employment, their testimony as to job-injury relationships should be evaluated carefully: for example, cautious medical testimony couched in terms of “might have” and “possibly” may be used in conjunction with lay testimony to find a probability, and positive conclusory conjunction with lay testimony to find a probability, and positive conclusory statements about causation by doctors should not be uncritically adopted.
Reid, 509 So.2d at 997.
Applying these well settled principles of law to the facts of this case, the trial court was not' manifestly erroneous. The trial judge accepted deposition testimony from two lay witnesses (the wife and neighbor of the- deceased) and from defendant’s medical expert, who was not the treating physician. It is undisputed that Mr. Quinones suffered an on-the-job injury to his leg, which never healed and for which he was receiving compensation from the defendant up until the time of his death. Mr. Quinones’ leg never healed and in fact at the time of his death it was described by his wife, as “black,” “dead” and incapable of movement. The Quinones’ neighbor, Mrs. Roy .testified that Mr. Qui-nones was as “healthy as a horse” prior to the accident and that his condition steadily worsened. She further testified that the swelling and blackness in the leg had traveled up to the knee and that there was a hole in Mr. Quinones’ leg which went to the bone. Mrs. Roy also testified that at the hospital, she observed black blood being pumped from Mr. Quinones’ prior to his death. This chain of events (on-the-job injury, worsening of the injury, and subsequent death) is highly indicative that the deceased’s continually worsening leg condition played some causative role in his death, be it as a contributing, accelerating or aggravating factor.
The defendant’s expert witness, Dr. Nelson, never treated Mr. Quinones but rather based his testimony on his posthumous interpretation of Mr. Quinones’ medical records. He testified that his opinion was that Mr. Quinones’ death was caused by cirrhosis of the liver brought on by the deceased’s alcohol consumption. The trial court noted however that there were sharp conflicts as to the degree of Mr. Quinones’ alcohol consumption, and further, that the autopsy slides, which could have been definitive on the issue of *330 alcoholism as a causative agent, were not included in the record, nor even examined by Dr. Nelson. Furthermore, Dr. Nelson did not rule out the work related accident as a contributing or accelerating factor in Mr. Quinones’ death. In fact he testified, as the majority acknowledges, that many factors, including the injury with its resultant infections and medications, contributed to Mr. Quinones’ demise. In addition, Dr. Nelson testified that Mr. Quinones was suffering from some form of infection and was septic, but could not say where the infection was located.
Looking at these facts, reasonable minds might differ as to whether Mr. Quinones’ indisputably severe leg injury contributed to, or accelerated his death. The majority states “the trial court should have accepted [Dr. Nelson’s testimony] and given it effect.” 630 So.2d at 1308. The trial court did give effect to his testimony and concluded “[reasonable minds can differ as to what interpretation is to be placed upon the conclusions reached by the expert.” Tr. Ct. Reas, for Jdgmt., p. 1. As stated in Reid, the trial court need not accept the expert’s testimony as conclusive, but rather the expert’s testimony couched in terms of “possibly” may be coupled with lay testimony to create a probability here that Mr. Quinones’ leg injury contributed to, or accelerated his death.
The trial court after examining all the testimony and evidence ruled in favor of the plaintiff, thus necessarily finding that Mr. Quinones’ leg injury contributed to, or accelerated his death. This finding of the trial court was not manifestly erroneous and the court of appeal erred in so holding. The majority likewise errs and the trial court judgment should be reinstated.