STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

05-1282

JAMES R. DUPLECHAIN

VERSUS

BELL OFFICE SUPPLY

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 2
PARISH OF RAPIDES, NO. 03-08243
JASON GERARD OURSO, WORKERS' COMPENSATION JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and James T. Genovese, Judges.

AFFIRMED.

Jonathan Clyde Vidrine
West & Vidrine
P. O. Drawer 1019
Ville Platte, LA 70586
Telephone: (337) 363-2772
COUNSEL FOR:
    Plaintiff/Appellee - James R. Duplechain

Laurie Wilder Maschek
Rabalais, Unland & Lorio
5100 Village Walk - Suite 300
Covington, LA 70433
Telephone: (985) 893-9900
COUNSEL FOR:
    Defendant/Appellant - Bell Office Supply

THIBODEAUX, Chief Judge.

Defendant-employer, Bell Office Supply, appeals the Office of Workers' Compensation judgment that injuries sustained by Plaintiff-employee, James Ray Duplechain (Mr. Duplechain), from a motorcycle accident occurred while he was in the course and scope of his employment, making him eligible for benefits under the Louisiana Workers' Compensation Act. For the following reasons, we affirm the judgment.

I.

**ISSUE**

Did Mr. Duplechain sustain injuries from an accident that occurred in the course and scope of his employment, and did those injuries arise out of his employment with Bell Office Supply?

II.

**FACTS**

Mr. Duplechain was the manager of Bell Office Supply (BOS) in Ville Platte, Louisiana in April of 2003. He was also President of the Board of Directors, and a part owner with a twenty-percent ownership interest in the business. He had been continuously employed by BOS since 1974, and assumed the position of Manager in 1976. As Manager, he was responsible for all aspects of the day-to-day operations of the business. BOS had a small office staff, consisting of Mr. Duplechain and two other office workers, plus a delivery truck driver.

As part of his management responsibilities, Mr. Duplechain would often have to personally complete many of the tasks required by the daily activities of the business. Uncontroverted testimony from him and the other BOS employees reveals

1

that his tasks included: making personal sales calls to new and existing clients; loading and unloading merchandise; taking inventory of stock and ordering more merchandise; making sure customers' orders were placed and delivered on time; solving any delivery problems that might occur, such as the delivery truck breaking down; sorting through and processing bids; and, manning the cash register in the store.

To enable Mr. Duplechain to perform all of the above-listed duties, BOS supplied him with a pick-up truck. All of the expenses for this truck were paid for by BOS.

BOS was officially open to the public Monday through Friday, from 8 a.m. to 5 p.m. However, Mr. Duplechain would often work before and after closing and on weekends in order to maintain all of the responsibilities required to make BOS competitive, and serve its customers in a timely fashion.

On April 17, 2003, the BOS delivery truck became disabled in the middle of the daily deliveries. Mr. Duplechain arranged for the truck to be towed to a repair shop, and then allowed the delivery truck driver to use the pick-up truck supplied to him by BOS to finish the day's deliveries. Mr. Duplechain used his personal motorcycle, as he did on a regular basis, to resume his work schedule and continue responding to the duties of the day. After a break during which he umpired a high school baseball game, Mr. Duplechain returned to BOS to complete any unfinished projects for the day. He arrived at BOS after 5pm when the office and store were officially closed for the day. He had to unlock the door, turn on the lights, re-start the computer, and he began processing the bids that had been placed by customers that day. All other BOS employees had left for the day.

Mr. Duplechain then noticed that a number of printing orders had been left behind by the delivery man, and had not been delivered to the printer that day as

2

scheduled. Since it was after hours, Mr. Duplechain decided that he needed to deliver the orders to the home of the owner of Johnson's Printing, T. J. LeBouef, in Eunice, Louisiana. April 17, 2003 was the Thursday before Good Friday. Both BOS and Johnson's Printing would be officially closed for the three-day Easter weekend, but Mr. Duplechain wanted the orders to be at Johnson's in time for them to begin work immediately on them Monday morning when they returned from the holiday weekend. It was his intention to ensure that the orders would be processed in a timely manner for BOS's customers.

Mr. Duplechain used his personal motorcycle to make the delivery even though the BOS pick-up truck had been returned to the office and was available for his use. He stated that he chose to use the motorcycle because it got better gas mileage. Both the printshop owner T. J. LeBouef and Mr. Duplechain stated that BOS printing orders had been delivered to Mr. LeBouef's home after hours by Mr. Duplechain using his personal motorcycle on a number of previous occasions. Testimony from witnesses estimate that the delivery was made sometime between 5:30 p.m. and 7:25 p.m. on April 17, 2003.

After making the delivery, Mr. Duplechain met his family for dinner at a restaurant near Mr. LeBouef's home in Eunice, Louisiana. Approximately thirty to forty minutes later, Mr. Duplechain and his wife set out for Ville Platte, Louisiana on his motorcycle. Mr. Duplechain stated that he was going back to BOS to finish the work that he had left unfinished on his desk before he made the printing delivery. Before he arrived at BOS, his motorcycle was struck by an on-coming car in the opposite lane of traffic that was attempting to make a left turn. Mr. Duplechain sustained serious injuries that have left him completely and permanently disabled. He lacks the capability to work in any capacity whatsoever.

3

Mr. Duplechain filed this disputed claim for compensation with the Louisiana Office of Workers' Compensation. Both parties submitted their case to the workers' compensation judge on the record that had been developed rather than having a trial. The only issue in dispute was whether Mr. Duplechain was in the course and scope of his employment when the accident occurred. The trial court determined that he was, and BOS then filed this appeal.

III.

## LAW AND DISCUSSION

### Standard of Review

Appellate courts cannot overturn the factual determinations of workers' compensation courts unless the trial court was clearly wrong, or committed manifest error. *Smith v. La. Dep't of Corr.*, 93-1305 (La. 2/28/94), 633 So.2d 129. Factual determinations include reasonable evaluations of credibility and reasonable inferences of fact, especially when conflict exists in the testimony of witnesses or parties. *Id.* "[I]f the WCJ's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Lyons v. Bechtel Corp.*, 00-364, p. 7 (La.App. 3 Cir. 12/27/00), 788 So.2d 34, 40, *writ denied*, 01-282 (La. 3/23/01), 787 So.2d 996 (citation omitted).

Under Louisiana's workers' compensation statute, a worker must prove that an accident with resulting injuries arose out of, and occurred in the course of his or her employment by a preponderance of the evidence. *Bruno v. Harbert Int'l, Inc.*, 593 So.2d 357 (La.1992). Appellate courts must give great deference to the workers' compensation judge's determination as to whether the employee has met his or her burden of proof. *Id.*

4

> In determining whether the employee has discharged his burden of proof, the workers' compensation judge should accept as true a witness' uncontradicted testimony, even though the witness is a party, absent circumstances that cast suspicion on the reliability of that testimony. Further, the workers' compensation judge's determinations on whether the employee's testimony was credible and on whether the employee met his burden of proof are factual findings not to be disturbed on appeal absent manifest error.

*Honeycutt v. Elbert Walker Constr.*, 01-1291, pp. 3-4 (La.App. 3 Cir. 2/6/02), 815 So.2d 1011, 1014 (citations omitted).

While the worker bears the burden of proving that an injury occurred by an accident arising from and in the course of his or her employment by a preponderance of the evidence, the Louisiana Supreme Court in *McLin v. Industrial Specialty Contractors, Inc.*, 02-1539 (La. 7/2/03), 851 So.2d 1135, directed Louisiana courts to interpret the work-related accident requirement liberally.

> The provisions of the workers' compensation law are to be interpreted liberally in favor of the worker in order to effectuate its purpose of relieving workers of the economic burden of work-connected injuries by diffusing the cost on channels of commerce. *Lester v. Southern Cas. Ins.*, 466 So.2d 25 (La.1985). *See also Coats v. American Tel. & Tel. Co.*, 95-2670 (La. 10/25/96), 681 So.2d 1243; *Harold v. La Belle Maison Apartments*, 94-0889 (La. 10/17/94), 643 So.2d 752.

*Id.* at 1139.

The Louisiana Workers' Compensation Act defines an accident as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La.R.S. 23:1021(1). There is no question from the record, nor do any of the parties disagree, that Mr. Duplechain suffered an accident which meets the elements of this statutory definition of an accident.

There is also no question that Mr. Duplechain was very seriously injured as a result of that accident. The sole debate in this case is whether the accident in which those injuries were sustained arose out of, and occurred in the course of his employment with BOS, as required by La.R.S. 23:1031(A).

### A Compensable Accident Must Arise Out of and Occur In the Course of Employment

Louisiana Revised Statutes 23:1031 states that only injuries which both arise out of, and occur in the course of employment are compensable under the workers' compensation system. La.R.S. 23:1031(A). An analysis of whether an injury occurred in the course and scope of employment requires an analysis of both the arising out of, and course of employment requirements. "The terms *arising out of*, and *in the course of* constitute a dual requirement. The former suggests an inquiry into the character or origin of the risk while the latter brings into focus the time and place relationship between the risk and the employment." *Raybol v. La. State Univ.*, 520 So.2d 724, 726 (La.1988). Therefore, we must determine whether there is evidence in the record which reasonably supports a conclusion that Mr. Duplechain's injuries both arose out of, and occurred in the course and scope of his employment. "[T]his court has recognized the mutual interdependence of the two concepts in determining the relationship of the injury to the employment." *Mundy v. Dep't of Health and Human Res.*, 593 So.2d 346, 349 (La.1992).

In his reasons for judgment in favor of Mr. Duplechain, the workers' compensation judge relied, at least in part, upon the Louisiana Supreme Court's analysis of the interdependence of these two factors elaborated in *McLin.* If an employee is actively engaged in the performance of his or her work duties, during contemplated work hours, at a place where those employment activities take the

6

employee, then he or she has met the "in the course of" employment requirement. *McLin*, 851 So.2d at 1140. Then, "[t]he requirement that an employee's injury 'arise out of' the employment relates to the character or origin of the injury suffered by the employee and whether this injury was incidental to the employment. *Williams*[*v. Regional Transit Authority*], 546 So.2d [150,]161 [(La.1989)]." *Id.*

We will first determine whether Mr. Duplechain's injury occurred in the course of his employment because "when the employee is squarely within the course of his employment, virtually any risk (whether an increased risk or not) has been considered as arising out of employment. W. Malone & H. Johnson, *supra* at [13 *Louisiana Civil Law Treatise – Worker's Compensation*] § 193 [(2d ed. 1980).]" *Mundy,* 593 So.2d at 349. Basically, "the principal criteria for determining course of employment are time, place and employment activity." *Id.*

All of the deposition testimony in the record confirms Mr. Duplechain's assertion that he went to the printer in Eunice because he was completing a work errand on behalf of his employer, BOS. The record shows that he had made such trips to the printer after hours in the past. The record also reveals that he often used his motorcycle to make such trips.

There is no requirement in the statute or the caselaw that an employee must use a vehicle supplied by his or her employer when completing work activities off the employer's premises. It is an unimportant fact in this case because Mr. Duplechain had used his motorcycle to conduct many tasks on behalf of BOS for many years. BOS had no policy against the use of the motorcycle, nor was there a policy requiring the use of BOS official vehicles when conducting BOS business. BOS offers no testimony or other evidence to contradict Mr. Duplechain, or any of the other deposition testimony. Additionally, BOS's assertion that by taking his

motorcycle Mr. Duplechain assumed greater risk than what was required for completing the task is merely speculative, and therefore not a valid issue.

The record contains testimony and other evidence which tend to demonstrate that BOS benefitted from Mr. Duplechain's efforts to serve the customers, even after hours. Michelle Fontenot and Tiffany Fontenot, BOS's two other employees, both corroborated Mr. Duplechain's statements that he often worked before and after the store officially closed, on holidays and weekends, and that customers would even call him at home in order to get the supplies that they needed. BOS likely benefitted from this kind of dedication and customer service.

BOS argues that even if Mr. Duplechain was conducting an employment-related duty, at a time and place contemplated by his employment, he was no longer in the course and scope of his employment when the accident occurred because of the application of the "going-and-coming rule."

> Generally, injuries sustained by an employee while traveling to and from work are not considered to have occurred within the course and scope of his employment, and thus, are not compensable under the Workers' Compensation Act. *Stephens v. Justiss-Mears Oil Co.*, 312 So.2d 293 (La.1975); W. Malone & H. Johnson, 13 *Louisiana Civil Law Treatise--Workers Compensation* § 168 (4th ed. 2002). This rule, often called the "going-and-coming rule," is premised on the theory that, ordinarily, the employment relationship is suspended from the time the employee leaves his work to go home until he resumes his work. *Phipps v. Bruno Const.*, 00-0480 (La.App. 3 Cir. 11/2/00), 773 So.2d 826 (citing *Yates v. Naylor Industrial Services, Inc.*, 569 So.2d 616, 619 (La.App. 2 Cir.1990), *writ denied*, 572 So.2d 92 (La.1991).

*McLin*, 851 So.2d at 1140.

Mr. Duplechain claims that he was not traveling home from his employment task, but rather that he was heading back to the BOS office to complete

the day's work that he had left undone on his desk when he left to go to the printer's home. Both Michelle Fontenot and Tiffany Fontenot state that when they came into work on the Monday following the accident, Mr. Duplechain's computer and lights were on, and the bids he had been working on were left scattered all over his desk, not yet completed. They both stated that Mr. Duplechain must have come in after 5 p.m. on that Thursday, April 17, because they had turned off the computers and lights when they left the office that day at 5 p.m. The two women and Mr. Duplechain were the only ones with keys to the BOS office, and neither one of the women had returned until the following Monday morning.

Michelle stated that she assumed that the bids on Mr. Duplechain's desk were not yet completed. Typically, when he was finished with the bids he would put a BOS stamp on them, and the bids lying on his desk did not have that stamp on them. She also stated that Mr. Duplechain was the only person with a key who would typically come into BOS after hours and finish the bids. He was the only BOS employee at the time who worked on the bids, and he preferred having them completed the day they were placed.

The testimony of Michelle and Tiffany corroborates Mr. Duplechain's assertion that he was working late, and intended to return to BOS to finish that work. BOS offers no evidence or testimony which contradicts Mr. Duplechain's claim that he was heading back to BOS to finish the work he had begun earlier in the evening. Therefore, he was not going home from work, he was still working when the accident occurred, making the "going-and-coming rule" inapplicable to this case.

The record supports the conclusion that Mr. Duplechain was working for BOS when he went to Eunice to deliver the printing orders to the printer, and that he was heading back to BOS to continue working. Therefore, the judgment of the Office

9

of Workers' Compensation that he was in the course of his employment when the accident occurred is reasonable.

We now determine if there was evidence in the record to support a reasonable conclusion that the accident also arose out of Mr. Duplechain's employment. In *Williams*, the statutory requirement that injuries must also arise out of an employee's employment was explained:

> Under La.R.S. 23:1031, the employee's injury must arise out of his employment. The purpose of the "arising out of" requirement is to assure that compensation will be awarded only for those personal injuries related to risks incidental to employment. *Reid v. Gamb*, 509 So.2d 995 (La.1987); *Nix v. City of Houma*, 488 So.2d 184 (La.1986); Malone & Johnson, [13 La. Civil Law Treatise, Worker's Compensation] *supra*, § 191. The "arising out of" inquiry focuses upon whether the character or origin of the risk giving rise to injury was employment related. *Raybol v. Louisiana State University*, 520 So.2d 724 (La.1988).

*Williams*, 546 So.2d at 158-59.

The record makes clear that Mr. Duplechain would not have traveled to Eunice the evening of April 17, 2003 except to deliver the printing orders that had been left behind by the BOS delivery man earlier that day. Mr. Duplechain's explanation that he wanted the printing orders to get to the printer in time to be processed first-thing on the next business day was reasonable, and BOS offers no testimony or other evidence to contradict Mr. Duplechain's reasoning. Since the printing orders needed to be at the printer, and Mr. Duplechain needed to return to BOS to finish his work, he would not have been on the road, at the location of the accident, at the time of the accident, had he not been engaged in an employment activity for BOS. Therefore, it is reasonable to conclude that Mr. Duplechain's injuries also arose out of his employment. "An accident arises out of employment if the employee was engaged about his employer's business and when the conditions of

10

obligations of the employment cause the employee in the course of employment to be at the place of the accident at the time the accident occurred." *McLin*, 851 So.2d at 1142.

BOS argues that Mr. Duplechain deviated from his work route because he did not use the same route to come back from Eunice as he took to go to Eunice. However, the route taken by an employee is not determinative of whether the employee was in the course and scope of his employment or whether the accident arose out of one's employment unless the employee was going to or coming home from work. In this case, Mr. Duplechain was performing a task that benefitted his employer. The record reveals that there are at least three different routes one can take from Ville Platte to Eunice. The performance of a work related task does not require an employee to use exactly the same route if there are choices of routes to take.

**Was There a Substantial Deviation From the Course of Employment**

BOS alleges that the workers' compensation judge committed legal error by not applying the substantial deviation doctrine.

> Generally, "[a]n identifiable deviation from a business trip for personal reasons takes the employee out of the course of employment until the employee returns to the route of the business trip, *unless* the deviation is so small as to be disregarded as insubstantial." 1 Larson's Workers' Compensation Law § 17-1 (emphasis added); *see also* Malone & Johnson, 13 Louisiana Civil Law Treatise, Workers' Compensation § 174, at 405 & n. 1.

*Timmons v. Silman*, 99-3264, p. 5 (La. 5/16/00), 761 So.2d 507, 511.

Mr. Duplechain admits that after delivering the printing order, he and his family had supper at a near-by restaurant. Had the accident occurred while he was going to the restaurant, at the restaurant, or coming back from the restaurant on a

11

route that would not lead him back to BOS, then we would have reason to discuss the substantial deviation doctrine. However, the accident occurred within approximately one mile of the BOS office, which is approximately twenty miles from Eunice, Louisiana. It is clear from the facts in evidence that Mr. Duplechain's personal deviation for supper was over, and that he was back within the course and scope of his employment.

IV.

## CONCLUSION

An employee is within the course and scope of his or her employment at the time of an alleged work-related accident if that accident both arises out of, and occurs in the course of his or her employment. The determination of whether an employee was in the course and scope of his or her employment is a factual determination. Factual determinations made by a workers' compensation judge cannot be overturned on appeal unless they are clearly wrong or contain manifest error.

In this case, the workers' compensation judge reasonably concluded that because Mr. Duplechain was returning to the BOS office from a work-related errand at the time of his accident that he was within the course and scope of his employment. The fact that he took a dinner break, and then returned to work is not a determinative issue in this case. Likewise, the route he chose to use to complete his work errand is not part of the analysis required to determine if he was in the course and scope of his employment unless he was going to or coming home from work, which he was not. The judgment of the Office of Workers' Compensation is affirmed. All costs of this appeal are cast to the Defendant/Appellant BOS.

**AFFIRMED**.

12